MR. JUSTICE JOHN C. HARRISON
delivered the opinion of the court.
This is a petition of Hon. Gordon R. Bennett, presiding district judge in charge of the Lewis and Clark County grand jury, requesting in effect a declaratory judgment from this Court on certain issues raised in the grand jury proceedings of the Workmen’s Compensation Division, Department of Labor and Industry, State of Montana.
Three issues are presented:
1) What authority does the district court have over grand jury subpoenas?
2) What authority has the district court to examine the proceedings of the grand jury to determine if its instructions, given upon empanelment are being adhered to?
*357 3) What authority has the district court to determine whether agents of the grand jury, such as investigators, are adhering to the law or conducting themselves appropriately as attaches of the court?
The petition was set for oral argument before this Court on July 7, 1976, together with several other matters arising out of the grand jury investigation. Several counsel argued for this Court to accept the district court’s petition, while others argued this Court had no authority to issue an advisory opinion, and there was nothing before the Court upon which to make a determination, either by appeal or by supervisory control.
With the argument that this Court has no jurisdiction, we cannot agree. In the first instance, the petition of Judge Bennett is not one for an advisory opinion. Advisory opinions are those opinions issued by a court in response to a request from some other branch of government, such as the legislative or executive, asking for information concerning matters of law. 16 C.J.S. Constitutional Law § 150. We are here involved with justiciable issues arising from bona fide controversies in the district court.
We consider Judge Bennett’s questions as justiciable controversies contemplated by Rule 57, Montana Rules Civil Procedure. First, a justiciable controversy requires that parties have existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities be of such an overriding public moment as to constitute the legal equivalent of all of them. The decisions of this Court recognize and support this definition. See: The Forty-Second Legislative Assembly v. *358 Lennon, 156 Mont. 416, 420, 481 P.2d 330; Conrad et al. v. Managhan et al., 157 Mont. 335, 485 P.2d 948; State ex rel. Kvaalen v. Graybill, 159 Mont. 190, 496 P.2d 1127; Woodahl v. Montana Board Natural Resources and Conservation, 163 Mont. 193, 516 P.2d 383; State ex rel. Irvin v. Anderson, 164 Mont. 513, 525 P.2d 564.
As this Court stated in Lennon, in taking jurisdiction under the Montana Uniform Declaratory Judgments Act, Title 93, Chap. 89, R.C.M.1947:
“A declaratory judgment action is a proper proceeding in which to reach and answer the legal issues raised in this proceeding. A court of record in Montana is specifically granted the power ‘to' declare rights, status, and other legal relations’ of a party (section 93-8901, R.C.M.1947) which ‘are affected by a statute’ (section 93-8902, R.C.M.1947) and in which a declaratory judgment ‘will terminate the controversy or remove an uncertainty’ (section 93-8905, R.C.M.1947). This is precisely the situation that exists in the present case. * * *”
First, we outline a brief factual setting of the grand jury cases. In 1974, the Montana legislature enacted section 79-2315, R.C.M.1947, which provides in pertinent part:
“The attorney general shall conduct on behalf of the state, all prosecutions for public offenses disclosed by an audit of a state agency performed by the legislative auditor. If the attorney general shall decline such prosecution or shall fail to commence action on a public offense within a reasonable time the county attorney of the appropriate county shall conduct on behalf of the state such prosecution.”
Pursuant to the direction of section 79-2315, the attorney general began an investigation arising out of an audit of the Workmen’s Compensation Division and requested the two judges of the first judicial district to call a grand jury. This request was denied and the attorney general applied to this Court for a writ of supervisory control, directing the two judges to empanel a grand jury. In State ex rel. Woodahl v. District Court, 166 *359 Mont. 31, 530 P.2d 780, this Court ordered the empanelment of a grand jury and since that time the grand jury has been functioning, resulting in a number of indictments.
Due to numerous delays in getting cases to trial, this Court issued this order dated June 15, 1976, entitled “In the Matter of the Workmen’s Compensation Litigation”, this Court’s No. 13410:
“It appearing in the light of recent events that the rights of the public, the state, the defendants and the judiciary are being subordinated to personal and extraneous ends and purposes,
“And it appearing that the Montana Supreme Court should act under its general supervisory powers pursuant to Art. VII, Sec. 2 of the Montana Constitution, in order to remedy and mitigate the effects of the foregoing situation,
“IT IS ORDERED:
“(1) That the attorney general of Montana and other public prosecutors, all defense counsel, and the presiding district judges in all pending criminal cases involving the Workmen’s Compensation investigations and prosecutions are directed to appear at a Conference to be held in the Courtroom of this Supreme Court on the 21st day of June, 1976, at 2:00 p.m.
“(2) That the Commission on Practice is directed to investigate the conduct of all public prosecutors and defense attorneys in pending Workmen’s Compensation litigation, determine whether there are any violations of the Code of Professional Responsibility and transmit the Commission recommendations, including disciplinary action, if indicated, to this Court in the usual manner.
“3. That in order to prevent further injury to the rights of the public, the state, the defendants and the judiciary pending the Conference herein provided, all counsel, their staffs clerks, stenographers and attaches are ordered and directed to refrain directly or indirectly from public comment in any way relating to the litigation heretofore described.
*360 “(4) Any violation of this order shall subject the offender to proceedings for contempt of court.
“(5) The Clerk of this Court is directed to cause notice to be given by mailing a true copy hereof forthwith to all public prosecutors, defense counsel, and presiding district judges in all pending Workmen’s Compensation cases. District judges shall bring the district court file to the Conference herein provided.
“(6) No excuses will be accepted for nonattendance at said Conference.”
Following the hearing on June 21st, 1976, Judge Bennett petitioned this Court for a declaratory judgment, this Court’s No. 13437, as to the heretofore enumerated three questions. Underlying the questions is a basic question as to the nature of a grand jury proceeding, which must be answered before giving specific answers to Judge Bennett’s questions.
The Supreme Court of the United States discussed the nature of grand jury proceedings in United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561, 568, 569, 572:
“Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, andits operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. ‘It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.’ Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919).
“The scope of the grand jury’s powers reflects its special role in insuring fair and effective law enforcement. A grand jury *361 proceeding is not an adversary hearing in which guilt or innocence of the accused is adjudicated. Rather, it is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. The grand jury’s investigative power must be broad if its public responsibility is adequately to be discharged. * * *”
There is a grave public need for a grand jury which may conduct an unfettered and uninterrupted ■ investigation. The grand jury has a responsibility to the public to thoroughly investigate the matters before it. The public must know that no lead went uninvestigated, that the public may have confidence in the full and fair administration of justice.
Measuring the public need for a full, broad grand jury investigation against any potential harm to a witness who has been subpoenaed, it is clear the need for an unfettered grand jury is much greater. What, if anything, is lost by anyone if the grand jury hears evidence from a witness a second time, even if that evidence was conceded to be irrelevant to the grand jury’s basic investigation. The grand jury conducts its investigation in secret, and its investigation is not adversarial. The grand jury does not determine guilt or innocence, it only determines if criminal proceedings should be begun. Most of the witnesses that appear before the grand jury will never be indicted, but the grand jury needs their testimony simply to. continue its investigation. The witnesses lose nothing by testifying. The grand jury has a right to every man’s evidence, even if it would be embarrasing to him personally. Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626. If a witness should be later indicted, he would be accorded the rull range of rights granted to him as a defendant in a criminal case. If, at that time, evidence is offered that is irrelevant an objection would lie, and the legal question can be determined in a court of law.
The constant interruption of the grand jury by witnesses who wish to litigate the validity of the subpoenas which call them *362 before the grand jury, could easily result in the investigation coming to a grinding halt.
The logic of the United States Supreme Court in Calandra explaining why the exclusionary rule should not apply to grand jury proceedings applies with equal force to the questions now before this Court:
“* * * Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial. Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury’s primary objective. The probable result would be ‘protracted interruption of grand jury proceedings,’ * * * effectively transforming them into preliminary trials on the merits. In some cases the delay might be fatal to the enforcement of the criminal law. Just last Term we reaffirmed our disinclination to allow litigious interference with grand jury proceedings:
“Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public’s interest in the fair and expeditious administration of the criminal laws.’ United States v. Dionisio, 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973).”
The questions posed by Judge Bennett must be answered against the backdrop of this strong policy against saddling the grand jury investigation with delays for preliminary hearings that would frustrate the public need for an unfettered grand jury investigation. This Court will not tolerate “litigious interference with grand jury proceedings”.
We now consider Judge Bennett’s concern as to the authority of a district judge over grand jury subpoenas in the instant case. *363 The statutory section in the Code of Criminal Procedure which applies to grand jury subpoena power is section 95-1407, R.C.M. 1947, which provides:
“A subpoena requiring the attendance of a witness before the grand jury may be signed and issued by the county attorney, by the grand jury or by the judge of the district court, for witnesses in the state, in support of the prosecution, for those witnesses whose testimony, in his opinion is material in an investigation before the grand jury, and for such other witnesses as the grand jury upon investigation pending before them may direct.” (Emphasis added.)
The statute allows the court, the county attorney, or the grand jury to issue subpoenas. It allows any one of the three to subpoena witnesses whose testimony is, in the caller’s opinion, material.
However, in the instant case, the judge’s charge is the limiting feature to the scope of the grand jury.
The general rule is that a grand jury is entitled to obtain testimony or subpoena all evidence necessary for its deliberations. However, in certain circumstances, exceptions to the general rule are made. For example, there is the necessity for conformity with the reasonableness requirements of the Fourth and Fifth Amendments to the United States Constitution.
The court may quash a subpoena duces tecum which is constitutionally overbroad. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. The court may quash a subpoena duces tecum which violates the Fifth Amendment’s right against self-incrimination. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Losavio v. District Court In & For Tenth Jud. Dist. (Colo.1975), 533 P.2d 32. A grand jury may subpoena a witness even though it is powerless to force him to testify over a valid claim of self-incrimination absent a grant of immunity. United States v. Winter, 2 Cir., 348 F.2d 204.
Quashing a subpoena because there is no showing of the materiality of the testimony sought is clearly erroneous. *364 United States v. United States District Court, 4 Cir., 238 F.2d 713. This does not mean that the district court may never quash a grand jury subpoena no matter how far afield the grand jury may go from the area of its original investigation, only that this power is limited to the most extreme cases where the court, by not quashing the subpoena, would be permitting a gross abuse of process. In United States v. United States District Court, 4 Cir., 238 F.2d 713, 722, the Court said:
“* * * While the judge has the supervisory duty to see that its process is not abused or used for purposes of oppression or injustice * * * there should be no curtailment of its inquisitorial power except in the clearest cases of abuse.”
Applying that test, the clearest case of abuse requires something more than recalling witnesses whose testimony is relevant to the original inquiry. Oppression is something substantially more than telling a witness that if he lies before the grand jury he will be charged with perjury. Only in a much stronger case, where there was gross misconduct associated with the use of process, would be court be justified in interfering with the grand jury’s investigation by quashing the grand jury’s subpoena.
From the foregoing discussion it is apparent and we hold, that the district court may not interfere with the grand jury’s subpoena power except (a) where the subpoena duces tecum is over-broad; (b) where the subpoena requires self-incrimination; (c) in the clearest case of grossly abusive conduct; (d) where the grand jury’s investigation goes beyond the scope set forth above; or (e) where, if the court did not interfere, the result would be an abuse of process.
Judge Bennett’s second issue revolves around the authority of the district court to inquire into the grand jury proceedings to determine if the limits of the charge are being violated, it is clear the district court may inquire into the grand jury proceedings only to see that it stays within the statutory provisions of section 79-2315, R.C.M.1947.
The Code-of Criminal Procedure directs the grand jury to *365 retire to a “private room” and look into the offenses cognizable by it, section 95-1404(b), R.C.M.1947. Section 95-1406, R.C.M. 1947, allows the grand jury to ask advice of the district court judge, but it requires, absent a request for such advice, that the district judge not be present during the sessions of the grand jury. The district court is not to monitor the grand jury proceedings. The United States Supreme Court in Calandra, at 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561, 568, said:
“No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry.”
In re Kittle, C.C., 180 F. 946, 947, where Felix Frankfurter was the Assistant United States District Attorney, Federal District Judge Learned Hand refused to relieve a witness from examination by the grand jury, stating:
“* * * fhgy are the voice of the community accusing its members, and the only protection from such accusation is in the conscience of that tribunal. Therefore, except in sporadic and ill-considered instances, the courts have never taken supervision over what evidence shall come before them * * *.”
To summarize the second matter of concern to Judge Bennett, the district court has authority to limit the area of a grand jury investigation by its charge given at empanelment and the district court may inquire into the grand jury proceedings to ascertain if any instructions which were given are not being followed. However, such authority is restricted to the limits previously referred to in this opinion as set forth in section 79-2315, R.C.M.1947.
Judge Bennett’s third matter of concern is the extent of the authority of the district court over the agents of the grand jury to ascertain if these agents are obeying the law or conducting themselves appropriately while the grand jury is conducting its investigation.
We noted in this Court’s order setting a hearing on this matter, that one of the matters of concern is a petition filed by counsel for John Boyer, William F. Pellegrini, John C. Drescher *366 and Wade J. Dahood to have certain subpoenas quashed. To summarize the affidavits and their allegations, we note that the fact an indictment came down, partially from their testimony on their first appearance before the grand jury, does not close off further inquiry. Each of the first three named witnesses later signed affidavits which reflect upon the accuracy, veracity and completeness of their prior grand jury testimony. Since an indictment against Dahood was partially based on their testimony, it would appear to this Court that it is not only relevant but absolutely necessary for the grand jury to ascertain whether or not the allegations are correct. The very integrity of the entire investigation leading to the Dahood indictment may depend upon the veracity and accuracy of the testimony given the the three witnesses.
The petition of Wade J. Dahood, filed earlier, related to testimony of another witness, Henry T. Laughlin. The filing of that affidavit resulted in an unusual closed hearing before Judge Bennett at which Laughlin’s testimony was taken, a transcript of which was submitted and considered by this Court in State ex rel. Woodahl v. District Court, Mont., 553 P.2d 971, 33 St.Rep. 537 (June 1976). That transcript had possible discrepancies between Dahood’s affidavit and Laughlin’s subsequent testimony respecting the events described in the affidavit. To not have called Laughlin back to the grand jury for more testimony, as was done, would have interfered with the grand jury’s full investigation of the Dahood case. The Dahood petition contains only speculation and its conclusions, that the witnesses are being recalled for harassment and intimidation, are without grounds either in law or fact. A legitimate and lawful purpose for the subpoenas exists; they should issue. See: In re Grand Jury Subpoenas Duces Tecum Addressed to Certain Executive Officers of M. G. Allen & Associates, Inc., 391 F.Supp. 991 (D.C.1975).
In Blair v. United States, 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979, 982 it was noted:
“ ‘It is clearly recognized that the giving of testimony and the *367 attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the government is bound to perform upon being properly summoned * * * The personal sacrifice involved is a- part of the necessary contribution of the individual to the welfare of the public. The duty, so onerous at times, yet so necessary to the administration of justice according to the forms and modes established in our system of government * * * is subject to mitigation in exceptional circumstances; there is a constitutional exemption from being compelled in any criminal case to be a witness against oneself, entitling the witness to be excused from answeripg anything that will tend to incriminate him * * * some confidential matters are shielded, from considerations of policy, and perhaps in other cases for special reaspps a witness may be excused from telling all that he knows. C
‘But, aside from exceptions and qualifications — and none such is asserted in the present case — the witness is bound not only to attend, but to tell what he knows in answer to questions framed for the purpose of bringing out the truth of the matter under inquiry.’” (Emphasis supplied.)
The district court judge has limited power over a grand jury. Once it is called, the grand jury is not subject to control except as heretofore set out and discussed in this opinion.
In United States v. Doe (Ellsberg), 1 Cir., 455 F.2d 1270, 1274, the Court said:
“We recognize * * * that grand jury proceedings cannot be policed in any detail. It is a price we pay for grand jury independence * * *.”
In that same case, in a memorandum attached at the end of the opinion, appears a statement which we think applies in the instant case:
“* * * defendánts seek to break up the play before it has started, and then claim the government was offside.”
This Opinion shall constitute a declaratory judgment.
*368 MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE CASTLES concur.