No. 81-63

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

GARY LEE,

Petitioner and Appellant,

vs.

STATE OF MONTANA,

Respondent and Respondent.

Appeal from:   District Court of the Eighth Judicial District,
               In and for the County of Cascade
               Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        Cameron Ferguson argued, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Sarah Power argued, Law Student, Office of Attorney
         General, Helena, Montana
        J. Fred Bourdeau, County Attorney, Great Falls, Montana

                              Submitted:  September 14, 1981

                               Decided:  October 22, 1981

Filed:  OCT 22 1981

_____
          Thomas J. Kearney
                  Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff Gary Lee filed in the District Court, Eighth Judicial District, Cascade County, his complaint seeking declaratory judgment that section 6-8-304, MCA, is unconstitutional. The District Court held the statute to be constitutional, and entered judgment against Lee. He appeals from the District Court judgment. We reverse the District Court.

The full text of section 61-8-304, MCA, follows:

"Declaration of speed limits--exception to the basic rule. The attorney general shall declare by proclamation filed with the secretary of state a speed limit for all motor vehicles on all public streets and highways in the state whenever the establishment of such a speed limit by the state is required by federal law as a condition to the state's continuing eligibility to receive funds authorized by the Federal Aid Highway Act of 1973 and all acts amendatory thereto or any other federal statute. The speed limit may not be less than that required by federal law, and the attorney general shall by further proclamation change the speed limit adopted pursuant to this section to comply with federal law. Any pro- clamation issued pursuant to this section becomes effective at midnight of the day upon which it is filed with the secretary of state. A speed limit imposed pursuant to this section is an exception to the requirements of 61-8-303 and 61-8-312, and a speed in excess of the speed limit established pursuant to this section is unlawful notwithstanding any provision of 61-8-303 and 61-8-312."

The foregoing statute was enacted by the legislature as a part of Ch. 60, Laws of Montana (1974), where it was denominated section 32-2144.1, R.C.M. 1947. The statute became section 61-8-304, MCA (1978). In 1979, the legislature amended the section slightly in Ch. 421, Laws of Montana (1979), § 66.

The statute was enacted by the legislature in 1974, in response to the Emergency Highway Energy Conservation Act (Emergency Act) (Pub.L. No. 93-239). In effect, this federal act provided that no federal highway funds should go to any

state failing to enact a 55 mile per hour maximum speed limit on its highways.

In section 2(e) of the Emergency Act, Congress provided that:

> "This section shall cease to be in effect (1) on and after the date on which the President declares that there is not a fuel shortage requiring the application of this Act, or (2) on and after June 30, 1975, whichever date first occurs."

The provisions of Ch. 60, Laws of Montana (1974), granting the attorney general the power to proclaim a speed limit, became effective March 2, 1974. On that date, the Montana attorney general issued a proclamation "that the maximum speed limit day and night, for all motor vehicles on all public streets and highways in the state of Montana is fifty-five (55) miles per hour, effective midnight, March 2, 1974."

Before the expiration of the Emergency Act, Congress adopted and the President of the United States approved on January 4, 1975, the "Federal-Aid Highway Amendments of 1974," 23 U.S.C. §§ 101, et seq, (Pub.L. No. 93-643). This new law provided that a state must have a 55 mile per hour maximum speed limit in order to receive federal funds. The same new law, in section 114(c), 23 U.S.C. § 154, repealed section 2 of the Emergency Act.

There have been subsequent changes in the federal laws respecting the entitlement of states to federal funds for state highway purposes. The most recent change is Pub.L. No. 97-35, enacted in August 1981. It is enough to say here that as of the time of this opinion, there is still in effect a federal law which conditions the rights of states to receive federal funds for highway purposes upon the adoption of a 55 mile per hour maximum speed limit law.

-3-

Since March 2, 1974, no proclamation respecting a maximum speed limit has been issued by any Montana attorney general. The parties have argued pro and con as to the effect of that lack of further proclamation in the light of the repeal of the original speed limit provisions in the Emergency Act. It makes no difference to our decision whether the proclamation of March 2, 1974, became void after the repeal of the original federal law, or whether the attorney general should have issued a new proclamation. We view the provisions of section 61-8-304, MCA, as unconstitutional as originally enacted, and as now provided. We concern ourselves only with two facets of the history of the legislation: (1) The legislature, having met four times since the enactment of the 1974 legislature, has done nothing about a statewide speed limit except to re-enact section 61-8-304, MCA, in 1979; and, (2) a statewide maximum speed limit of 55 miles per hour is now being enforced in this state under and by virtue of the attorney general's proclamation of March 2, 1974.

Lee argues on appeal that section 61-8-304, MCA, is unconstitutional as an impermissible delegation of the legislative power of the state. The state contends that: (1) Lee has no standing to challenge the authority of the attorney general under section 61-8-304, MCA, and therefore a justiciable controversy is not presented here; (2) the act is valid; (3) the statute may be saved in any event, by severing therefrom the objectionable portions; and, (4) section 61-8-304, MCA, incorporates an existing law and is therefore valid.

We look first to whether Gary Lee has standing to bring this action. In his complaint, he alleges that he is a resident of Fort Shaw, Cascade County, Montana; that he

frequently drives a motor vehicle on the highways of this state, particularly Montana State Highway No. 200 and Interstate Highway No. 15 between Fort Shaw and Great Falls, Montana; that the attorney general has issued the proclamation to which we have adverted; that except for such proclamation, he would be entitled to drive a motor vehicle under the provisions of section 61-8-303, MCA, (the basic speed rule) in excess of 55 miles per hour as he was accustomed to doing prior to the issuance of the proclamation.

The state filed a motion to dismiss the complaint, raising the standing of the plaintiff to sue in the action. The District Court denied this motion, and did not treat the subject of plaintiff's standing in its subsequent orders or judgments. The state did not cross-appeal, but we examine the issue of standing in any event under Rule 14, M.R.App.Civ.P.

Lee's complaint is for declaratory judgment. It is brought under the Uniform Declaratory Judgment Act. Section 27-8-101, et seq., MCA. That act provides, in section 27-8-202, MCA:

> "Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."

The stated purpose of the Uniform Declaratory Judgment Act is remedial. Section 27-8-102, MCA. Its purpose is to settle and to afford relief from uncertainty and insecurity as to rights, status, and other legal relations; and, it is to be liberally construed and administered. Section 27-8-102, MCA.

The test of whether a justiciable controversy exists is set forth in Matter of Secret Grand Jury Inquiry (1976), 170 Mont. 354, 357, 553 P.2d 987, 990. There this Court said:

"First, a justiciable controversy requires that parties have existing and genuine, as distinguished from theoretical, rights or interest. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion. Third, must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities be of such overriding public moment as to constitute the legal equivalent of all of them."

It is readily seen that Lee's complaint and attack on the constitutionality of the statute fit all three of the tests. Those tests are supported by a substantial number of cases decided in Montana, all set forth in Secret Grand Jury Inquiry, supra.

In arguing that Lee has no standing to sue in this case, the state relies chiefly upon Chovanak v. Matthews (1948), 120 Mont. 520, 188 P.2d 582. In that case Chovanak attacked a 1945 Montana statute providing for the licensing of slot machines owned and operated by religious, fraternal, charitable or nonprofit organizations. He sued as a resident, citizen and elector. This Court pointed out that he was suing against gambling in general, and said that it appeared from his complaint that slot machines, licensed or unlicensed, were utterly anathema to him. This Court found no controversy between him and the defendants in that case.

On the other hand, Gary Lee is directly affected by the operation of the statute he attacks in this case. His right or privilege to drive a motor vehicle by the basic rule of safety under section 61-8-303, MCA has been adversely limited by the enforcement or threatened enforcement of section 61-8-304, MCA. He wants to drive his motor vehicle as fast as the basic rule allows. The statute he attacks operates against him and all drivers in Montana directly.

-6-

All members of the driving public have an affected interest under the statute attacked, but that does not mean that no member of that driving public can question the constitutional validity of the statute without being arrested for a violation. The acts of the legislature which directly concern large segments of the public, or all the public, are not thereby insulated from judicial attack. Otherwise, the Uniform Declaratory Judgment Act would become largely useless where a plaintiff proposed to test the constitutional validity of a statute directly affecting him. Gary Lee, an automobile driver on Montana highways, has a personal, direct interest for which he can claim judicial protection when one Montana statute grants him a right or privilege to drive under basic safety requirements and another statute permits that right or privilege to be delimited without action of the legislature. Were we to hold otherwise, we would deprive Lee of judicial relief, and let stand the conflict that now exists between two enactments of the legislature.

We should also note other conflicts with section 61-8-304 in the statutes. The Department of Highways is given authority to set speed limits in section 61-8-309, MCA, when it finds the basic rule and its speed limits are greater or less than would be reasonable or safe on portions of highways. Section 61-8-304, MCA, is an exception to the power of the Department of Highways under section 61-8-309, MCA, as to speeds above that proclaimed in the attorney general's proclamation.

Section 61-8-310, MCA, gives local authorities power to alter the basic rule and speeds of section 61-8-303, MCA, when traffic and engineering investigations show urban speed limits to be greater or less than reasonable. Section 61-8-

-7-

304, MCA, conflicts with section 61-8-310, MCA, as to speeds above the attorney general's proclamation.

Section 61-8-312, MCA, authorizes trucks and truck-tractors to be driven at speeds up to 65 miles per hour on interstate and divided lane highways and up to 60 miles per hour on sections of primary and secondary highway, except at nighttime. Section 61-8-304 conflicts with section 61-8-312, MCA, as to speeds above the maximum set by the attorney general's proclamation.

Since 1974, no attempt has been made by the legislature to clarify these conflicts. The other statutes were enacted after due legislative consideration. Yet the provisions of these other statutes, legislatively enacted, may be and are being set aside without further legislative action by the proclamation of the attorney general governed by changes in the federal law alone. The attorney general need not consider safety, conservation, assured clear distance of vision, type and structure of the highway, or any other factor that would lead to a reasoned legislative or administrative decision. He is mandated to act as the federal law requires with no discretion or fact-finding. His proclamation is as immutably attached to a federal action as is a saddle to a horse.

Thus we come to the essential invalidity of section 61-8-304, MCA. The authority conferred upon the attorney general in that statute is clearly an impermissible delegation of legislative authority. 1972 Mont. Const., Art. III, § 1; Matter of Auth. to Conduct Sav. & Loan Act. Etc. (1979), ____ Mont. ___, 597 P.2d 84, 36 St.Rep. 1207; Bacus v. Lake County (1960), 138 Mont. 69, 354 P.2d 1056.

Lee concedes that the legislature has the authority to adopt existing federal statutes or regulations in its enactments.

-8-

We agree. See Wallace v. Commissioner of Taxation (1971), 289 Minn. 220, 184 N.W.2d 588 (the statute adopted the federal definition of adjusted gross income for state income tax purposes).

The constitutional infirmity of section 61-8-304, MCA, arises out of its mandatory directions to the attorney general to proclaim a speed limit "not . . . less than that required by federal law," "whenever the establishment of such a speed limit by the state is required by federal law" to receive federal highway funds. Under the 1974 act, and under the act as it now exists, the attorney general is also required to terminate such proclaimed speed limit "whenever such a speed is no longer required by federal law." Section 61-8-305(2), MCA. A more blatant handover of the sovereign power of this state to the federal jurisdiction is beyond our ken.

Almost without exception, the cases which recognize the right of a legislature to adopt as a part of its enactments existing federal laws and regulations also except from that right any adoption of changes in the federal laws or regulations to occur in the future. Wallace v. Commissioner of Taxation, supra; People v. DeSilva (1971), 32 Mich.App. 707, 189 N.W.2d 362 (statute upheld on ground of severability); Cheney v. St. Louis Southwestern Railway Co. (1965), 239 Ark. 870, 394 S.W.2d 731; Idaho Savings & Loan Association v. Roden (1960), 82 Id. 128, 350 P.2d 225; Seale v. McKennon (1959), 215 Or. 562, 336 P.2d 340; Dawson v. Hamilton (Ky. 1958), 314 S.W.2d 532; State v. Urguharet (1957), 50 Wash. 191, 310 P.2d 261; Brock v. Superior Court (1937), 9 Cal.2d 291, 71 P.2d 209, among others.

Three states have upheld legislation similar to Montana's and denied constitutional challenges to statutes incorporating federal speed limits. Masquelette v. State (Tex.Crim. 1979), 579 S.W.2d 478; State v. Dumler (1977), 221 Kan. 386, 559 P.2d 798; State v. Padley (1976), 195 Neb. 358, 237 N.W.2d 883. All three can be distinguished from this case by the terms of the Montana statute. In the other three cases, either the legislature pegged the speed limit, or the power granted to a state official or body to adopt speed limits was couched in permissive instead of mandatory terms. No state that we can find has approved a delegation of sovereign power involved here for mandatory action in the future, based upon the federal law.

The state further argues that in any event, if we were to determine that the ability of the attorney general in the future to change the maximum speed limits is unconstitutional, nonetheless, the statute can be saved by declaring that portion severable so as to preserve the constitutional validity of the rest of the act. However, there is no severability clause either in Ch. 60, Laws of Montana (1974), or in Ch. 421, Laws of Montana (1979), § 66, where this statute was enacted and re-enacted. Moreover, the power of the court to sever an unconstitutional portion cannot be effectively exercised in this case because the attorney general's proclamation must issue "whenever" the federal law changes, and must terminate whenever the federal requirement ceases. There is no comfort for the state therefore in severability.

We want to state clearly that had the legislature itself established the speed limit originally or at any subsequent session, we should then have found such enactment constitutional, even though it may have been in response to

the federal requirements. Moreover, we see no constitutional infirmity, if an emergency of the sort presented here arose, in granting such proclamation power to a state official, if it were only for the interim between legislative sessions. The evil we find in the present legislation is the permanent delegation of the legislative sovereign power.

We consider now the effect of our determination that this legislation is invalid. We invite chaos to our highway system, and grave damage to the economy of our state, if because of this decision the federal funds were to be shut off. The maximum speed limit of 55 miles per hour is in harmony with the national goal of conservation of gasoline and oil, and with improved safety. It is imperative for the best interests of the state that the maximum speed limit be continued until the legislature has had a chance to act, and that law enforcement officers continue the enforcement thereof until valid legislation is enacted.

We have the power as an appellate court to order the effect of our decision to be retrospective or prospective, and in effect, to postpone the effective date of our decision. Such action is in order here.

Accordingly, the decision of the District Court that section 61-8-304, MCA, as now constituted is a valid constitutional act is reversed. We declare that statute to be unconstitutional. This opinion shall have the force and effect of a declaratory judgment to that effect in favor of the plaintiff, Gary Lee. We postpone the effective date of this decision and judgment to October 1, 1983, or to such earlier date as the legislature may enact and the governor approve maximum speed limit legislation comporting with the federal requirements and

-11-

complying with our state constitution. Until such date, violations of the maximum speed limit as proclaimed by the attorney general on March 2, 1974, shall continue to constitute offenses pursuant to section 61-8-718 and section 61-11-103, MCA. We retain jurisdiction of this cause until the further order of this Court. Costs to the plaintiff.

_____
                                   Justice

We Concur:

_____
           Chief Justice

_____

_____

_____

_____

_____
              Justices

-12-