No. 00-072

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 256

301 Mont. 472

10 P.3d 813

NORTHFIELD INSURANCE COMPANY, and

LLOYDS OF LONDON,

Plaintiffs and Appellants,

v.

MONTANA ASSOCIATION OF COUNTIES,

Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Michael J. Milodragovich, G. Patrick Hagestad; Milodragovich, Dale,

Steinbrenner & Binney, Missoula, Montana

For Respondent:

Stuart L. Kellner; Hughes, Kellner, Sullivan & Alke, Helena, Montana

Submitted on Briefs: April 27, 2000
Decided: September 26, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Northfield Insurance Company (Northfield) and Lloyds of London (Lloyds) appeal from the order entered by the First Judicial District Court, Lewis and Clark County, granting the motion filed by the Montana Association of Counties, Joint Powers Insurance Authority (MACO) to dismiss their complaint for declaratory judgment. We affirm.

¶2 The sole issue on appeal is whether the District Court abused its discretion in dismissing the complaint seeking declaratory relief for lack of a justiciable controversy.

## *BACKGROUND*

¶3 The present case stems from a class action lawsuit entitled *Alan Doe, et al. v. Park County, et al.*, currently pending before the United States District Court for the District of Montana, Billings Division, in which the plaintiffs allege they were sexually abused while incarcerated at the Park County Detention Center (Detention Center). The *Doe* plaintiffs have asserted claims for negligence, violation of their constitutional rights, and intentional and negligent infliction of emotional distress against the Park County Sheriff and several jailers at the Detention Center.

¶4 MACO's self-insurance fund is the primary insurer for numerous public entities in Montana, including Park County. Pursuant to its primary insurance policy, MACO has assumed the defense and indemnification of Park County and the individual Park County officials named in the federal suit. Northfield and Lloyds are secondary assurance companies under a Public Entities All Lines Aggregate Insurance Policy (Policy) issued to MACO. Northfield and Lloyds brought the present action seeking a declaratory judgment that, under the terms of the Policy, they have no duty to indemnify MACO in connection

with the claims pending in federal court against MACO's insureds.

¶5 Among other things, Section II of the Policy provides comprehensive general liability indemnification for all sums which the assured becomes obligated to pay by reason of errors, omissions or negligent acts arising out of the performance of employment duties, including law enforcement duties. Section II states that any claim for damages "which the Assured intended or expected or reasonably could have expected" is excluded from coverage, as is "any claim resulting from the sexual or physical abuse or molestation of any person by the Assured."

¶6 Section IV of the Policy provides errors and omissions indemnity for any loss incurred by reason of a "Wrongful Act." The term "Wrongful Act" is defined to include any "act of neglect or breach of duty including misfeasance, malfeasance, and non-feasance by the Assured." Section IV states that any claim for damages "for bodily injury" or "arising out of law enforcement activities" is excluded from coverage.

¶7 MACO moved to dismiss Northfield's and Lloyds' complaint for declaratory judgment pursuant to Rule 12(b)(6), M.R.Civ.P., on the ground that it failed to state a claim upon which relief may be granted. The District Court granted MACO's motion and dismissed the complaint for lack of a justiciable controversy. Northfield and Lloyds moved to alter or amend the order, the District Court denied their motion, and Northfield and Lloyds appeal.

## STANDARD OF REVIEW

¶8 In evaluating a Rule 12(b)(6) motion to dismiss, a district court is required to construe the complaint in the light most favorable to the plaintiff and should not dismiss the complaint unless it appears the plaintiff is not entitled to relief under any set of facts which could be proved in support of the claims. *Loney v. Milodragovich, Dale & Dye, P.C.* (1995), 273 Mont. 506, 509, 905 P.2d 158, 160. The decision to dismiss a complaint for declaratory judgment is within the sound discretion of the district court. *Brisendine v. State, Dept. of Commerce* (1992), 253 Mont. 361, 364, 833 P.2d 1019, 1020 (citations omitted). "When a district court determines that declaratory relief is not necessary or proper, we will not disturb the court's ruling absent an abuse of discretion." *Ridley v. Guaranty Nat. Ins. Co.* (1997), 286 Mont. 325, 329, 951 P.2d 987, 989 (citations omitted). However, we review the conclusions upon which that decision is based to determine whether the court's interpretation of the law is correct. *Ridley*, 286 Mont. at 329, 951 P.2d

at 989 (citations omitted). A district court's ruling on whether a justiciable controversy exists is a conclusion of law. *See generally Ridley*, 286 Mont. at 332, 951 P.2d at 991; *Brisendine*, 253 Mont. at 365, 833 P.2d at 1021.

## *DISCUSSION*

### ¶9 **Did the District Court abuse its discretion in dismissing the complaint seeking declaratory relief for lack of a justiciable controversy?**

¶10 The remedial purpose of the Uniform Declaratory Judgments Act (Act), "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations," is to be liberally construed. Section 27-8-102, MCA. Nevertheless, liberal interpretation of the Act is tempered by the necessity that a justiciable controversy exist before courts exercise jurisdiction. *See Marbut v. Secretary of State* (1988), 231 Mont. 131, 135, 752 P.2d 148, 150. Indeed, "this Court has on occasion refused to entertain a declaratory judgment action on the ground that no controversy is pending which the judgment would affect." *Hardy v. Krutzfeldt* (1983), 206 Mont. 521, 524, 672 P.2d 274, 275. Furthermore, § 27-8-206, MCA, of the Act authorizes a district court to "refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

¶11 In granting MACO's motion to dismiss in the present case, the District Court determined that a declaratory ruling as to Northfield's and Lloyds' duty to indemnify in the early stages of the underlying federal litigation, and based on the current status of the federal complaint, would be premature. Because a ruling that Northfield and Lloyds have no duty to indemnify MACO might need to be modified later if liability ultimately were imposed on MACO as a result of a settlement or judgment actually entered, the District Court concluded that any declaratory relief granted in their favor would be "ineffectual and mere speculation." As a result, the court further concluded no justiciable controversy existed.

¶12 The test of whether a justiciable controversy exists contains three elements:

> First, a justiciable controversy requires that parties have existing and genuine, as distinguished from theoretical, rights or interest. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical

or academic conclusion. Third, [it] must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities be of such overriding public moment as to constitute the legal equivalent of all of them.

*Brisendine*, 253 Mont. at 364, 833 P.2d at 1020-21 (quoting Lee v. State (1981), 195 Mont. 1, 6, 635 P.2d 1282, 1284-85 (quoting Matter of Secret Grand Jury Inquiry (1976), 170 Mont. 354, 357, 553 P.2d 987, 990). We apply the justiciable controversy test to actions for declaratory judgment to prevent courts from determining purely speculative or academic matters, entering anticipatory judgments, providing for contingencies which may arise later, declaring social status, dealing with theoretical problems, answering moot questions, or giving abstract or advisory opinions. See Brisendine, 253 Mont. at 365, 833 P.2d at 1021; Montana Dept. of Nat. R. & C. v. Intake Water Co. (1976), 171 Mont. 416, 440, 558 P.2d 1110, 1123 (citations omitted).*

¶13 In *Brisendine*, for example, a denturist sought a judicial declaration that he was not prohibited from entering into a professional relationship with a dentist while the issue was still pending before the Board of Dentistry. *Brisendine*, 253 Mont. at 362-63, 833 P.2d at 1019-20. We upheld the district court's determination that no justiciable controversy existed because the complaint lacked specificity regarding his proposed business association and because Brisendine had not exhausted his administrative remedies. We determined that an action for declaratory judgment while the underlying controversy was still pending before an administrative board was premature and would serve only as an impermissible advisory opinion. *Brisendine*, 253 Mont. at 365, 833 P.2d at 1021.

¶14 Applying the justiciable controversy test to the present case, Northfield and Lloyds do not have an existing and genuine interest at stake at this time, even under the broad language of the Act. Northfield and Lloyds seek a declaration that they have no duty to indemnify MACO pursuant to the secondary Policy, even though the record fails to establish anything more than a hypothetical controversy regarding indemnification. While it is true that § 27-8-202, MCA, specifically affords any person whose rights, status or other legal relations are affected by a contract the right to have any question of construction or validity of such a contract determined under the Act, a justiciable controversy cannot exist based on hypothetical facts and abstract propositions. *Hardy*, 206 Mont. at 525, 672 P.2d at 276.

¶15 In *Hardy*, the plaintiffs sought a judicial declaration that several preemptive rights of first refusal pertaining to real property were unreasonable restraints on alienation. *Hardy*,

206 Mont. at 523, 672 P.2d at 275. We held that no justiciable controversy existed because the record did not reflect an intent by any party to sell property outside the first refusal clause; nor was any third party seeking relief from the clause.

> No litigant before us is in immediate danger of sustaining direct injury from the pre-emptive clause. Therefore we do not have a justiciable controversy over which the judicial power to determine real controversies may be exercised. Broad language in the Uniform Declaratory Judgments Act, section[s] 27-8-101, et seq., MCA, may not be used as a platform for courts in this state to plunge into indefinite amorphous ponds of contract interpretation.

*Hardy, 206 Mont. at 525, 672 P.2d at 276.*

¶16 Similarly here, Northfield and Lloyds can claim no immediate danger of direct injury from the indemnification provisions of the Policy. First, MACO has made no formal request for indemnification. In this regard, Northfield and Lloyds contend that a justiciable controversy exists because MACO forwarded them the *Doe* complaint, thereby implicitly claiming a right of indemnification. However, putting a secondary insurer on notice of a lawsuit does not constitute a claim for indemnification. Thus, any determination of Northfield's and Lloyds' duty to indemnify would require us to speculate that MACO will eventually seek indemnification.

¶17 Moreover, MACO has not exhausted its self-insured retention funds vis-a-vis the federal litigation. Consequently, while the parties advance opposing arguments on whether the duty to indemnify arises when a complaint is filed or when a final settlement or judgment is entered, we need not resolve that question here. A secondary insurer's duty to indemnify cannot be said to exist if primary coverage has not been exhausted. *See* 16 Ronald A. Anderson, Couch on Insurance 2d § 62:41, at 55-56 (rev. ed. 1999 Supp.). Thus, a final settlement or adjudication of the underlying federal case within MACO's primary coverage funds would render any determination as to Northfield's and Lloyds' duty to indemnify moot. Similarly, if the underlying federal case is adjudicated in favor of MACO's insureds, no liability will exist on which indemnification could be sought. In that event, any determination as to Northfield's and Lloyds' duty to indemnify via this declaratory relief action also would be moot.

¶18 The judicial determination Northfield and Lloyds seek involves a contractual duty which has not yet arisen and which may, in fact, never arise. A determination of the issue,

therefore, would constitute an advisory opinion and courts have no jurisdiction to issue such opinions. *See Brisendine*, 253 Mont. at 365, 833 P.2d at 1021; *Hardy*, 206 Mont. at 524, 672 P.2d at 275.

¶19 Generally, a justiciable controversy also must be a controversy on which a judicial determination will have the effect of a final judgment regarding the rights, status or legal relations of one or more of the parties. *Brisendine*, 253 Mont. at 364, 833 P.2d at 1021. The declaratory relief Northfield and Lloyds seek here regarding their indemnification obligations under the Policy does not satisfy this standard. The underlying federal case which is the subject of any potential indemnification under the Policy has yet to be settled or tried. Assuming arguendo that coverage and indemnification under the Policy are precluded on the facts alleged in the federal complaint, the plaintiffs in that action could still amend their complaint to add claims and legal theories which would trigger coverage. In addition, facts may still emerge during the course of the litigation which would give rise to Northfield's and Lloyds' duty to indemnify MACO under the Policy. Either event would nullify any declaratory judgment that Northfield and Lloyds have no duty to indemnify. As a result, either event would require the District Court to amend or withdraw the declaratory judgment.

¶20 Notwithstanding, Northfield and Lloyds contend that declaratory judgment is appropriate because all the federal claims in the underlying case arise from alleged intentional acts of sexual abuse. They posit that, because Montana law recognizes the validity of both sexual abuse exclusions and intentional act exclusions as contained in the Policy, MACO can obtain indemnification as a result of the federal litigation under no set of facts nor under any legal theory ultimately pled or moved. As discussed above, however, it would be premature at this stage in the underlying federal litigation to determine conclusively that any claims upon which the plaintiffs there might prevail arise from conduct which would preclude coverage under the Policy. The underlying federal record contains only unproven, and perhaps incomplete, allegations of fact.

¶21 In addition and importantly, the cases Northfield and Lloyds cite-but do not analyze or discuss-do not support their position. For example, in *New Hampshire Ins. Group v. Strecker*, an insured sought defense and indemnification pursuant to an umbrella commercial liability policy when he was named as a defendant in a civil suit after pleading guilty to three counts of felony sexual assault of his daughter. *New Hampshire Ins. Group v. Strecker* (1990), 244 Mont. 478, 798 P.2d 130. The insurer filed an action for declaratory judgment that policy exclusions for willful violation of a statute and for

intentional acts precluded coverage. We upheld the district court's declaratory judgment in favor of the insurer after concluding that the undisputed facts established that the insured intentionally molested his daughter. *New Hampshire Ins.*, 244 Mont. at 479-80, 798 P.2d at 130-32.

¶22 Similarly, in *Farmers Union Mut. Ins. v. Kienenberger*, we upheld a declaratory judgment that an insurance company had no duty to defend or indemnify its insured in a civil suit filed against the insured after the insured's 13-year-old son pled guilty to sexual intercourse without consent. *Farmers Union Mut. Ins. v. Kienenberger* (1993), 257 Mont. 107, 108-09, 847 P.2d 1360, 1360-61. There again, we were willing to interpret and apply an intentional act policy exclusion only after first concluding that the relevant underlying fact-that the insured committed an intentional crime-was undisputed. *Farmers Union*, 257 Mont. at 109, 847 P.2d at 1360-61.

¶23 In contrast to these cases cited by Northfield and Lloyds, the underlying facts in the present case are disputed and the underlying litigation has not been finally adjudicated or settled. It simply is not appropriate to determine whether the conduct of the insureds in the present case falls within the exclusions of the Policy prior to a determination or stipulation as to the underlying facts, and the cases relied upon by Northfield and Lloyds do not suggest otherwise.

¶24 Northfield and Lloyds also rely on *Ridley* for the proposition that the declaratory judgment they seek need not act as a final resolution of all issues between them and MACO. In *Ridley*, we construed the plain language §§ 27-8-201 and 27-8-202, MCA, determining that "it is not a basis for denying declaratory relief that all of the 'rights, status, or other legal relations' of the parties cannot be decided in the same proceeding." *Ridley*, 286 Mont. at 331, 951 P.2d at 990. However, while Northfield's and Lloyds' interpretation of *Ridley* is correct, *Ridley* does not cure the lack of a justiciable controversy in the present case.

¶25 In *Ridley*, a tortfeasor's insurer refused to pay any medical expenses to a third-party tort victim prior to final settlement of his claims, even though the insurer had admitted ninety percent liability. Consequently, Ridley sought a declaration that the insurer was obligated to pay his medical expenses pursuant to § 33-18-201, MCA, of the Montana Unfair Trade Practices Act (UTPA). *Ridley*, 286 Mont. at 327-28, 951 P.2d at 988-89. The district court dismissed the action, in part because the insurer contested the extent of the causal relationship between the accident and Ridley's injures. It determined that a

declaratory judgment was not appropriate because the judgment would not resolve all issues between the parties and, therefore, would not have the effect of final adjudication. *Ridley*, 286 Mont. at 329-30, 951 P.2d at 989-90. We reversed on the basis that the Act does not require a party seeking declaratory judgment to establish that the relief sought will resolve all issues between the parties before he or she is entitled to declaratory relief. *Ridley*, 286 Mont. at 331-32, 951 P.2d at 991. *See also* § 27-8-202, MCA.

¶26 Here, unlike in *Ridley*, the District Court did not dismiss Northfield's and Lloyds' declaratory action on the grounds that a declaratory judgment would not resolve all issues between the parties. It dismissed the action because any relief granted would be mere speculation and because subsequent proceedings in the federal litigation might require any declaratory judgment rendered now to be modified later.

¶27 Moreover, the essential fact necessary to the declaratory judgment in *Ridley*-namely that the insured was at least ninety percent at fault for the accident-was admitted by the insurer in that case, and the primary remaining factual issue was the causal relationship between the accident and the extent of the victim's injuries. *Ridley*, 286 Mont. at 328-29, 951 P.2d at 988-89. The legal issue presented for declaratory judgment-whether the UTPA required the insurer to pay the victim's medical expenses in advance of a full and final settlement of all his claims-was separate from, and would not be affected by, a final resolution of the liability issue. Consequently, the controversy was one on which the judgment of the court could effectively operate. *See Brisendine*, 253 Mont. at 365, 833 P.2d at 1021. Thus, while a declaratory judgment need not resolve all issues between the parties, it must resolve those issues addressed in a manner that will have the effect of a final adjudication. *Cf. Ridley*, 286 Mont. at 331, 951 P.2d at 990; *and Brisendine*, 253 Mont. at 364, 833 P.2d at 1020-21.

¶28 Here, Northfield and Lloyds seek a declaratory judgment as to their duty to indemnify under the Policy at some future time which might never arrive and on the basis of largely disputed factual allegations which may yet be modified and legal theories which may yet change. The judicial determination Northfield and Lloyds seek would serve only as speculative advice, subject to possible amendment or nullification upon final resolution of the underlying federal case; it would not act as a final adjudication on the indemnification issue. The justiciable controversy test is designed to prevent judgments from resting on such shifting sands.

¶29 We hold that the District Court correctly concluded that no justiciable controversy

exists. As a result, we further hold that the court did not abuse its discretion in dismissing Northfield's and Lloyds' complaint for declaratory judgment.

¶30 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ JIM REGNIER