No. DA 06-0295

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 85

BRUCE A. MILLER,

        Plaintiff and Appellant,

   v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-05-343
Honorable Holly B. Brown, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Daniel P. Buckley; Foust Buckley Law Office, Bozeman, Montana

        For Respondent:

        William Conklin; Conklin, Nybo & Lanning, Great Falls, Montana

Submitted on Briefs:  February 14, 2007

Decided:  March 27, 2007

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Bruce A. Miller appeals from an order of the Eighteenth Judicial District Court, Gallatin County, granting a motion for summary judgment in favor of State Farm Mutual Automobile Insurance (State Farm) and denying Miller's cross motion for summary judgment. We affirm.

¶2 The issue on appeal is whether the District Court erred when it determined that no justiciable controversy existed.

## BACKGROUND

¶3 This case arises out of an automobile collision between Miller and Emma Rosh. Miller was injured as a result. Rosh's liability was not disputed. Miller and Rosh were both insured by State Farm under separate policies. Miller's policy with State Farm provided up to $25,000 in medical payment coverage. State Farm paid medical coverage to Miller in the amount of $24,195.04. Rosh's State Farm policy provided up to $100,000 per person in liability coverage. Miller brought suit against Rosh in the Eighteenth Judicial District Court, Gallatin County, for negligence.

¶4 State Farm offered to settle the claim with Miller for $70,000. To arrive at the $70,000 offer, State Farm evaluated the claim then reduced that number by $24,195.04, the amount of medical payment coverage Miller received under his policy. State Farm based the reduction on the collateral source rule. Miller filed an action for declaratory judgment arguing that the collateral source rule is not applicable during settlement negotiations, and that it can only be applied after a judgment or verdict is reached. State Farm moved for

summary judgment, arguing that Miller failed to present a justiciable controversy, and Miller filed a cross motion for summary judgment. The District Court granted State Farm's motion and denied Miller's. Miller appeals.

## STANDARD OF REVIEW

¶5 We will not disturb a district court's determination that declaratory relief is not necessary or proper unless the court abused its discretion. *Northfield Ins. v. Ass'n of Counties*, 2000 MT 256, ¶ 8, 301 Mont. 472, ¶ 8, 10 P.3d 813, ¶ 8 (citations omitted). However, we review the court's interpretations of law to determine whether they are correct. *Northfield Ins.*, ¶ 8 (citations omitted).

## DISCUSSION

¶6 **ISSUE: Did the District Court err when it determined that no justiciable controversy existed?**

¶7 The purpose of the Uniform Declaratory Judgments Act (Act) is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. . . ." Section 27-8-102, MCA. The Act provides a district court with the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 27-8-201, MCA. "Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." Section 27-8-202, MCA. The court has discretion and therefore "may refuse to render or enter a declaratory judgment or decree where such judgment or

decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Section 27-8-206, MCA; *Brisendine v. State, Dept. of Commerce*, 253 Mont. 361, 364, 833 P.2d 1019, 1020 (1992) (citations omitted). It is necessary for a justiciable controversy to exist before a court may exercise jurisdiction under the Act. *Northfield Ins.*, ¶ 10.

¶8 The test to determine whether a justiciable controversy exists contains three elements:

> First, a justiciable controversy requires that parties have existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion. Third, [it] must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities be of such overriding public moment as to constitute the legal equivalent of all of them.

> We apply the justiciable controversy test to actions for declaratory judgment to prevent courts from determining purely speculative or academic matters, entering anticipatory judgments, providing for contingencies which may arise later, declaring social status, dealing with theoretical problems, answering moot questions, or giving abstract or advisory opinions.

*Northfield Ins.*, ¶ 12 (citations omitted).

¶9 Seeking a declaratory judgment too early in the proceedings, when other remedies are still available, may amount to an advisory opinion. *Brisendine*, 253 Mont. at 365, 833 P.2d at 1021. In *Brisendine*, a denturist sought a declaration from the district court as to his rights under statutes regarding business associations with dentists. *Brisendine*, 253 Mont. at 363, 833 P.2d at 1020. Brisendine, however, had not exhausted the administrative remedies available to him. *Brisendine*, 253 Mont. at 364, 833 P.2d at 1021. This Court determined

4

that granting his request would amount to giving an advisory opinion, and it would be an unwarranted intrusion into the Board of Dentistry's regulatory authority. *Brisendine*, 253 Mont. at 365, 833 P.2d at 1021. Thus, we held Brisendine failed to present a justiciable controversy. *Brisendine*, 253 Mont. at 365, 833 P.2d at 1021.

¶10 Similarly, in *Northfield Ins.*, we determined that no justiciable controversy existed in an action where the parties sought a declaration of their rights under a contract. *Northfield Ins.*, ¶ 28. The insurers in that case were seeking a declaratory judgment as to their duty to indemnify, even though no formal request for indemnification had been made. *Northfield Ins.*, ¶ 16. The determination of the dispute would have resulted in speculative advice and would not act as a final adjudication on the indemnification issue. *Northfield Ins.*, ¶ 28.

¶11 In this appeal, Miller is seeking a declaration that § 27-1-308, MCA, cannot be applied by insurance companies when evaluating cases and making settlement offers. Section 27-1-308(1), MCA, provides:

> In an action arising from bodily injury or death when the total award against all defendants is in excess of $50,000 and the plaintiff will be fully compensated for his damages, exclusive of court costs and attorney fees, a plaintiff's recovery must be reduced by any amount paid or payable from a collateral source that does not have a subrogation right.

Miller argues that he has presented a justiciable controversy because a judicial decision would settle the question of whether this statute has application to settlement offers; it would affect the rights of the parties who would then be able to act upon the judgment. He further argues that if insurers are allowed to use collateral source reduction during settlement negotiations, the reduction would discourage settlement, violate the prohibition against medical pay subrogation, and violate the made whole doctrine.

5

¶12    In support of his justiciability argument, Miller relies on *Ridley v. Guaranty Nat. Ins. Co.*, 286 Mont. 325, 951 P.2d 987 (1997). In *Ridley*, the plaintiff was seeking payment of his medical expenses pursuant to § 33-18-201, MCA, of the Unfair Trade Practices Act (UTPA). *Ridley*, 286 Mont. at 332, 951 P.2d at 991. The case had not reached a final verdict or settlement, thus the insurer argued that it did not yet have a legal obligation to pay medical expenses. *Ridley*, 286 Mont. at 331, 951 P.2d at 991. Relying on two Montana federal district court decisions, Guaranty National argued that it had a legal basis for its refusal to pay medical expenses. *Ridley*, 286 Mont. at 331-32, 951 P.2d at 991. The district court concluded that the question of whether an insurer has an obligation to pay medical expenses prior to settlement of the claim when liability is reasonably clear did not present a justiciable controversy. *Ridley*, 286 Mont. at 332, 951 P.2d at 991. We reversed, holding that this presented a justiciable controversy because a judgment would determine the respective rights and obligations of the parties under the UTPA. *Ridley*, 286 Mont. at 332, 951 P.2d at 991.

¶13    Miller's claim is distinguishable from *Ridley*. Unlike Ridley, Miller is not litigating a claim under existing rights or interests provided for in the UTPA. Rather, Miller is requesting the court to interject its opinion regarding what factors and circumstances parties may consider in negotiating a settlement.

¶14    Settlement is a process that belongs to the parties. The declared public policy of this State is to encourage settlement and avoid unnecessary litigation. *Augustine v. Simonson*, 283 Mont. 259, 266, 940 P.2d 116, 120 (1997) (citing *Holmberg v. Strong*, 272 Mont. 101, 106, 899 P.2d 1097, 1100 (1995)). The reasons for encouraging settlement are numerous. Settlement eliminates cost, stress, and waste of judicial resources. *Durden v. Hydro Flame*

*Corp.*, 1999 MT 186, ¶ 20, 295 Mont. 318, ¶ 20, 983 P.2d 943, ¶ 20. When the parties can control their own outcome by reaching an agreement themselves, "the result reached is frequently a more equitable adjustment than is possible to be had in a court of law." *Durden*, ¶ 20 (quoting *Black v. Martin*, 88 Mont. 256, 269-70, 292 P. 577, 581 (1930)). Insurers have a duty to attempt, in good faith, to negotiate prompt, fair, and equitable settlements in cases where liability is reasonably clear. Section 33-18-201(6), MCA.

¶15    Once a settlement is reached, courts can enforce the agreement. *See Dambrowski v. Champion Intern. Corp.*, 2003 MT 233, 317 Mont. 218, 76 P.3d 1080; *Hetherington v. Ford Motor Co.*, 257 Mont. 395, 849 P.2d 1039 (1993). Courts also have jurisdiction under the UTPA to oversee claims alleging unfair claim settlement practices. *See Graf v. Continental Western Ins. Co.*, 2004 MT 105, 321 Mont. 65, 89 P.3d 22; *Renville v. Farmers Ins. Exchange*, 2003 MT 103, 315 Mont. 295, 69 P.3d 217; *Safeco v. Montana Eighth Judicial Dist.*, 2000 MT 153, 300 Mont. 123, 2 P.3d 834; *Ridley*, 286 Mont. 325, 951 P.2d 987.

¶16    Miller asserts that he meets the first requirement of justiciability because he and State Farm have a genuine dispute. However, the first element of the justiciable controversy test is that the parties have existing and genuine rights or interests, not just a dispute. Miller argues that § 27-1-308, MCA, only provides reduction for collateral source in the event of an "award" or "recovery." Here, there has been no award or recovery, only settlement negotiations. Thus, he contends, the insurer cannot avail itself of the collateral source reduction and must make a settlement offer that has not been reduced by collateral source payments. This argument is without merit. Neither party has a legal obligation to enter into a settlement. Settlement negotiations are strictly voluntary. While settlement is encouraged

7

and Miller has a right to fair treatment under the UTPA, Miller has not asserted a violation of the UTPA. Miller has cited no authority for the proposition that a court can dictate what factors a party may or may not consider while engaging in a voluntary settlement process. Furthermore, a party is under no obligation to disclose what considerations it factored into its offer of settlement. The party can simply make a dollar offer with no explanation of how it arrived at that figure.

¶17 Further, Miller and State Farm have no controversy upon which the judgment of the court could effectively operate. State Farm stated it evaluated the claim based on Miller's likely recovery should the case proceed to trial, at which time, it would undoubtedly request collateral source reduction. Rather than proceed to trial and incur additional expenses, State Farm offered to settle based on the anticipated outcome. Miller, as is his right, has refused to settle for that amount.

¶18 Finally, a judgment by the court on this issue would not have the effect of a final judgment on any rights, status or legal relationship of the parties. Assuming arguendo that the court determined that the collateral source rule could not be considered in settlement offers, State Farm could withdraw its offer, provide another basis for its offer, or provide no basis at all, and Miller could still refuse to accept the offer. A declaratory judgment as requested would not terminate the uncertainty giving rise to the action.

¶19 We agree with the District Court that Miller has not presented a justiciable controversy and that a declaratory judgment is not appropriate in this matter. We affirm the judgment of the District Court.

/S/ W. WILLIAM LEAPHART

We concur:


/S/ JOHN WARNER
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS