DA 09-0228

FILED

December 23 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 442

FARMERS INSURANCE EXCHANGE, an inter-insurance exchange; and FIRE INSURANCE EXCHANGE, an inter-insurance exchange,

        Petitioners, Counter-Defendants, and Appellees,

   v.

DANIEL JOHNSON, an individual; D and B AUTO PARTS, a business entity; and LINDA JOHNSON, an individual,

        Respondents, Counter-Claimants, and Appellants.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause No. DV 08-255 Honorable Robert L. Deschamps, III, Presiding Judge |

COUNSEL OF RECORD:

      For Appellants:

          Quentin M. Rhoades; Sullivan, Tabaracci & Rhoades; Missoula, Montana

      For Appellees:

          James D. Johnson; Williams Law Firm, P.C.; Missoula, Montana

               Submitted on Briefs:  October 28, 2009

                      Decided:  December 23, 2009

Filed:

_____
                     Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Daniel Johnson, D and B Auto, and Linda Johnson (collectively Johnson) appeal the order of the District Court for the Fourth Judicial District, Missoula County, granting summary judgment in favor of Farmers Insurance Exchange and Fire Insurance Exchange (collectively Farmers) on Johnson's claims that Farmers breached its duties to defend and indemnify, committed constructive fraud, and violated the Montana Trade Practices Act. Johnson raises the following issue:

¶2     Did Farmers breach its duty to defend Johnson by sending an adjuster rather than an attorney to a pre-litigation mediation conference?

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     On September 9, 2006, Daniel Johnson (Daniel) and Ronald Ogden (Ogden) got into a physical altercation at the Chicken Coop Tavern in Seeley Lake, Montana. As a result of the altercation, Daniel was charged with felony aggravated assault and misdemeanor assault. At the time, Daniel, his wife Linda Johnson, and their business, D and B Auto, were insured by Farmers. Daniel requested that Farmers defend him against the criminal charges pursuant to the policies. Following an investigation, Farmers determined that the policies issued to Johnson did not provide coverage for criminal defense costs and denied Daniel's request.

¶4     On March 23, 2007, Ogden, through counsel, sent a letter to Daniel demanding payment of damages in the sum of $154,000 for personal injuries he claimed to have suffered as a result of the altercation. Daniel provided the letter to Farmers. Through its

2

adjuster, Mark Stevens, Farmers initially offered Ogden $5,000 to settle the claim. Later, upon receipt of further information, Stevens advised Ogden that Farmers would pay $29,000 in exchange for a full and final release of all damage claims against Daniel, but this did not resolve the matter.

¶5     Prior to the commencement of litigation, the parties agreed to participate in voluntary mediation, and met for a mediation conference on June 15, 2007. Farmers sent Adjuster Stevens to the conference. The meeting produced an understanding whereby Ogden would be paid $100,000, with Farmers paying $40,000 of that amount in exchange for a release of all civil claims against Daniel, and Daniel personally paying the remaining $60,000. Under the Settlement Agreement, which was not signed by Stevens for Farmers, funds were not to be disbursed to Ogden until the pending criminal charges against Daniel were dismissed with prejudice. On June 26, 2007, Farmers tendered its $40,000 payment in exchange for receipt of a written release of all civil claims executed by the Ogdens. The criminal charges were ultimately dismissed and the monies released to the Ogdens, who provided the executed release to Farmers.

¶6     In October, 2007, Johnson demanded payment from Farmers in the amount of $81,887.49, which included, among other things, the $60,000 Johnson had paid to Ogdens under the Settlement Agreement, and the attorney fees incurred in that matter. Farmers denied Johnson's demand for indemnification and, in February, 2008, filed a declaratory action seeking a determination of its obligations under the Johnson policies. Johnson counterclaimed, asserting breach of duty to defend, breach of duty to indemnify,

3

constructive fraud and violations of the Montana Trade Practices Act by Farmers. Reasoning that any attempt by the parties to settle the criminal charges violated public policy, the court construed the agreement as governing the civil claims only. Regarding the obligations under the policies, the court concluded that "Farmers met any duty to defend Johnson by actively participating in the mediation . . ." and that "Farmers met any duty to indemnify by making a payment on behalf of Johnson in exchange for a release of the civil claims," and granted summary judgment to Farmers. Johnson appeals.

## STANDARD OF REVIEW

¶7  The standard of review for a district court's granting of summary judgment is de novo. *Ruckdaschel v. State Farm Mut. Automobile Ins.*, 285 Mont. 395, 398, 948 P.2d 700, 702 (1997). We review the facts presented to the district court to determine whether the prevailing party is entitled to judgment as a matter of law. *Gentry v. Douglas Hereford Ranch, Inc.*, 1998 MT 182, ¶ 23, 290 Mont. 126, 962 P.2d 1205.

## DISCUSSION

¶8  ***Did Farmers breach its duty to defend Johnson by sending an adjuster rather than an attorney to the pre-litigation mediation conference?***

¶9  Johnson's appeal states a narrow issue—whether "by sending an insurance adjuster instead of an attorney to defend the insured at the mediation," Farmers breached its duty to defend Johnson under the policy.[1]  Johnson offers that the mediation comes

---

[1] Johnson's affidavit in support of summary judgment stated that an attorney representing Farmers attended the mediation, but that Farmers did not provide an attorney to represent Johnson, sending Adjuster Stevens instead. Johnson's appeal challenges Farmers' determination to send Stevens instead of legal counsel on Johnson's behalf.

4

within the policy's definition of "suit" for purposes of the provision requiring Farmers to "defend the insured against any suit" because "suit" is defined by the policy as including any "alternative dispute resolution proceeding" in which damages are claimed. Thus, because the mediation conference was an alternative dispute resolution proceeding, the duty to defend was triggered under the policy and Farmers breached its duty by failing to send an attorney to defend Johnson at the mediation. Johnson argues that Farmers is therefore estopped from denying any obligation to indemnify Johnson for all of their settlement and defense costs.

¶10 Farmers does not resist Johnson's interpretation of the above-mentioned policy provisions and, in fact, interprets them even more expansively than Johnson does. Farmers explains that "*[a]ll efforts* to compromise a claim, beginning with the initial settlement offer, can be characterized as 'alternative dispute resolution.'" (Emphasis added.) Farmers explains that insurers have an affirmative obligation to seek early settlements, citing § 33-18-201(6), MCA, and offers that pre-suit meetings and mediation sessions between claimants, their attorneys, and insurance adjusters are commonplace efforts to do so.

¶11 Farmers' essential concession that it had a duty to defend during the mediation narrows the analysis to whether it fulfilled that duty by sending an adjuster to the conference. Johnson argues that once the duty to defend arises, the insurer can only satisfy it by providing an attorney. Johnson cites to several cases from other jurisdictions for the general proposition that "[i]n order to discharge their duty to defend, insurers hire

5

counsel to conduct the defense of their insureds." *CHI of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113, 1115 (Alaska 1993). Farmers counters that "there is no legal authority whatsoever for the assertion that an insurance company must have counsel present at a mediation held prior to the filing of litigation." It adds that, from a practical perspective, conducting such conferences would necessarily be hindered or delayed if counsel was required to represent the insured, and urges that the "pre-litigation context" be considered in applying the duty to defend in this case.

¶12    The duty to defend certainly encompasses functions which can only be fulfilled by a licensed attorney, such as appearing on behalf of an insured before a court of law and representing the insured throughout the legal proceeding. However, pursuant to authority provided by statute, insurance adjusters play a vital role in the resolution of claims prior to the initiation of litigation. "[O]n behalf of an insurer," an adjuster "investigates and negotiates the settlement of claims arising under insurance contracts . . . ." Section 33-17-102(1)(a), MCA. This is what Adjuster Stevens did. He investigated Ogden's claims against Johnson, conveyed offers of settlement to Ogden's counsel, and agreed to and attended a mediation conference. The mediation occurred prior to the initiation of litigation and was not part of any judicial proceeding. Rather, it was an informal, voluntary meeting. Stevens ultimately obtained a release of Ogden's claims against Johnson in exchange for a settlement payment from Farmers, thereby resolving the matter. Under these circumstances, we conclude that Stevens' actions fulfilled Farmers' duty under the policies to defend Johnson against Ogden's claims.

6

¶13 This conclusion is consistent with the public policy of encouraging settlements and avoiding unnecessary litigation. *See Miller v. State Farm Mut. Automobile Ins. Co.*, 2007 MT 85, ¶ 14, 337 Mont. 67, 155 P.3d 1278. Requiring that counsel be retained for informal settlement conferences could hinder the negotiation process and contravene the policy of encouraging out-of-court settlements.

¶14 Because Farmers did not violate its duty to defend, it is not liable for the settlement and defense costs claimed by Johnson.

¶15 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS