# FILED

August 6 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 12-0641

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 216

STATE FARM FIRE AND CASUALTY COMPANY,

      Plaintiff and Appellant,

    v.

DARYL and PATRICIA SCHWAN, individually and
as co-personal representatives of the ESTATE
OF WHITNEY SCHWAN,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DV 08-128
Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Martha Sheehy; Sheehy Law Firm; Billings, Montana

        For Appellee:

        Norman L. Newhall, III; Linnell, Newhall, Martin & Schulke, PC;
Great Falls, Montana

Submitted on Briefs:  May 15, 2013

Decided:   August 6, 2013

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 State Farm Fire and Casualty Company (State Farm Fire) sought a declaration that its homeowners policy excluded coverage for the vehicular death of Whitney Schwan (Whitney). Daryl Schwan and Patricia Schwan (Schwans), Whitney's parents and the co-personal representatives of her estate, counterclaimed that State Farm Fire was estopped from denying coverage because it had breached its duty to defend under the policy. The Twelfth Judicial District Court, Hill County, granted summary judgment to the Schwans. The District Court ordered State Farm Fire to pay the Schwans' claims and awarded them attorney fees and costs. State Farm Fire appeals and raises three issues. We address only the following issue, and reverse and remand for further proceedings:

¶2 *Did the District Court err in concluding that State Farm Fire breached its duty to defend?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On the night of June 19, 2004, Whitney was a passenger in a vehicle being driven by Travis Turner (Travis) on a road just south of Havre. Travis was driving his mother's Dodge Stratus, and lost control of the vehicle. The vehicle left the highway and overturned. Whitney and Travis were both thrown from the vehicle and sustained injuries that resulted in their tragic deaths.

¶4 Marvin and Cheri Turner (Turners), Travis's parents, had two State Farm insurance policies relevant to this matter. Turners had an automobile liability policy on the Dodge Stratus with State Farm Mutual Automobile Insurance Company (State Farm Auto). They also had a homeowners policy with State Farm Fire.

2

¶5 In 2007, Schwans sued both Travis's estate and the Turners (the Underlying Action). The complaint alleged that Travis was negligent in his operation of the vehicle and that Turners were negligent in entrusting Travis with the vehicle, failing to stop him from driving, providing him with alcohol on the night of the accident, and failing to warn Whitney of Travis's poor driving record.[1] State Farm Auto retained Billings attorney Calvin Stacey (Stacey) to defend the Turners in this action.

¶6 Several months later, Stacey notified State Farm Fire's in-house legal counsel, David Bauer (Bauer), of the Underlying Action. Stacey advised Bauer that Schwans had demanded payment of policy limits under both the State Farm automobile policy and the State Farm homeowners policy. While the homeowners policy generally excluded coverage for automobile accidents, the Schwans contended that the alleged facts triggered coverage pursuant to *Pablo v. Moore*, 2000 MT 48, 298 Mont. 393, 995 P.2d 460 (the term "arising out of" clearly excluded claims for negligent operation of a vehicle but did not clearly exclude coverage for the negligent hiring, training, and supervision of a driver who caused injury while driving).

¶7 Discussions regarding the status of the case were undertaken by Bauer, State Farm Auto Team Manager, Beth Corbin (Corbin), State Farm Fire Claim Team Manager, Jennifer McKenzie (McKenzie), and Stacey. State Farm Fire acknowledged a potential duty to defend the Turners under the homeowners policy and confirmed with Stacey that

---

[1] Travis's license was suspended at the time of the accident because of traffic violations and he was expressly excluded from coverage on the Dodge Stratus insurance policy.

3

he was defending the Turners on all claims in the Underlying Action. Stacey further advised that additional counsel was not necessary to assist in defending the Turners. Upon receipt of this information, State Farm Fire sent a letter to the Turners discussing the Schwan suit and Stacey's representation of them. The letter further stated, in part:

> It is also our understanding that you are not tendering defense of this lawsuit to State Farm Fire & Casualty Company at this time. . . . If we do not hear from you to the contrary, we will assume that it is acceptable for us to continue handling the case on these terms.

Based on its determination that Stacey was defending the Turners on all claims, State Farm Fire did not hire a separate attorney to defend the Turners in the Underlying Action.

¶8      However, State Farm Fire maintained contact with State Farm Auto and Stacey throughout the duration of the Underlying Action. Bauer advised Stacey that if State Farm Auto's defense of the Turners would terminate for any reason, State Farm Fire would assume responsibility for Stacey's continued defense of the Turners. Corbin agreed with Bauer and McKenzie's proposal for State Farm Fire to take over paying for Stacey's services if it became necessary.

¶9      Shortly thereafter, in January 2008, State Farm Fire filed an action (the Declaratory Action) seeking a declaration that it owed no duty to defend or indemnify the Turners under the homeowners policy for claims arising out of the subject auto accident. State Farm Fire retained an attorney of Turners' choosing to defend the Turners in the Declaratory Action. With the assistance of Stacey, Turners requested and obtained the representation of Michael Young (Young) for that matter.

4

¶10    In September 2008, a court-ordered mediation for the Underlying Action was held. Stacey attended with the Turners. Schwans' counsel, Norman Newhall, made a request to Stacey that Young also attend the mediation. Stacey contacted Young on this request, and also requested that a representative of State Farm Fire attend the mediation. Young attended in his capacity as Turners' counsel in the declaratory matter, and in-house counsel Bauer also attended. Although continuing to maintain that the homeowners policy excluded all of Schwans' claims against the Turners, Bauer offered "some money" in an unsuccessful attempt to settle the matter. Ultimately, the mediation concluded with an alternative settlement that included a consent judgment against the Turners for $750,000 and assignment of all of Turners' rights and claims under the homeowners' policy to the Schwans. In return, Schwans agreed not to execute the judgment against the Turners. The District Court entered judgment in favor of the Schwans pursuant to these terms.

¶11    Pursuant to the assignment of rights, the Schwans replaced Turners in the Declaratory Action. The District Court initially denied summary judgment on the coverage issue, and in December 2010, the Schwans filed a counterclaim alleging that State Farm Fire had breached its duty to defend the Turners by not retaining counsel to "appear and defend" the Turners in the Underlying Action. The District Court granted summary judgment to the Schwans on this issue, reasoning that language in the homeowners policy that State Farm Fire would "provide a defense at our expense by counsel of our choice" had been breached because State Farm Firm had not retained

5

separate counsel for Turners in the Underlying Action or contributed financially to payment of Stacey's legal fees:

> Under the facts of this case, the Court determines that in the underlying [ ] case, State Farm Fire and Casualty had to either provide separate counsel for the Turners, or authorize and pay for Mr. Stacey's services for the potential claims implicating the homeowners policy.

The court then concluded that because State Farm Fire had breached its duty to defend, it was estopped from denying coverage and was liable for the full amount of the stipulated judgment of $750,000, as well as Schwans' attorney fees and costs.

## STANDARD OF REVIEW

¶12 A district court's grant of summary judgment is reviewed *de novo*, applying the same criteria as the district courts. *Kaufman Bros v. Home Value Stores, Inc.*, 2012 MT 121, ¶ 6, 365 Mont. 196, 279 P.3d 157. When the material facts are undisputed, the question of whether an insurer breached its duty to defend is a question of law. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research Inc.* (*Ribi*), 2005 MT 50, ¶ 14, 326 Mont. 174, 108 P.3d 469. We review a district court's conclusions of law for correctness. *Ribi*, ¶ 14.

## DISCUSSION

¶13 *Did the District Court err in concluding that State Farm Fire breached its duty to defend?*

¶14 State Farm Fire argues that it satisfied its duty to defend the Turners, and that the District Court's determination that it breached the contract was error. The Schwans counter that State Farm Auto's hiring of Stacey to defend the Turners did not relieve

6

State Farm Fire of its equal duty to defend the Turners. Quoting from Jane M. Draper, *Performance by One Insurer of its Duty to Defend as Excusing Failure of Other Insurers Equally Obligated to Defend*, 90 A.L.R.3d 1199, 1200-01 (1979), the Schwans offer that "courts have answered unequivocally that performance by one insurer of its duty to defend does not excuse the failure of other insurers equally obligated to defend." However, State Farm Fire has never taken the position that it did not have its own obligation to defend the Turners. The question here is whether State Farm Fire fulfilled that duty by the actions it took.

¶15 Initially, we note that an insurer's duty to defend is independent from and broader than its duty to indemnify. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 21, 321 Mont. 99, 90 P.3d 381. Unlike the insurer's duty to indemnify, which arises only if there is coverage under the policy, the duty to defend is triggered when "a complaint against an insured alleges facts, which if proven, would result in coverage." *Staples*, ¶ 21 (citing *St. Paul Fire & Marine Ins. Co. v. Thompson*, 150 Mont. 182, 188, 433 P.2d 795, 799 (1967) and *Grindheim v. Safeco Ins. Co.*, 908 F. Supp. 794, 800 (D. Mont. 1995)). When determining whether the duty to defend has been triggered, all "factual disputes must be resolved in favor of coverage." *Staples*, ¶ 24.

¶16 Montana follows what other courts have termed the "mixed-action" rule, *see Buss v. Superior Ct.*, 939 P.2d 766, 774-75 (Cal. 1997), which requires an insurer to defend all counts in a complaint so long as one count potentially triggers coverage, even if the remaining counts would not be covered. *See Newman v. Scottsdale Ins. Co.*, 2013 MT

125, ¶ 40, 370 Mont. 133, 301 P.3d 348 ("a duty to defend is triggered where one portion of the complaint alleges facts which, if proven, would result in coverage, even if the remaining counts of the complaint would not be covered."); *Home Ins. Co. v. Pinski Bros, Inc.*, 160 Mont. 219, 227, 500 P.2d 945, 950 (1972) ("Inasmuch as there is coverage for the first count in Home's complaint against the architects, denial of coverage and defense was unjustified even though there was no coverage for the second and third counts in Home's complaint.").[2]

¶17    The significance of the rule to this case is that State Farm Auto was obligated under its duty to defend Turners in the Underlying Action to defend them against all claims in Schwans' complaint, even if some claims were not covered by the State Farm

---

[2] *Buss v. Superior Ct.*, 939 P.2d 766, 775 (Cal. 1997) is the seminal case in this regard, wherein the California Supreme Court explained the practical necessity of requiring an insurer to fully defend a "mixed-action":

> To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The "plasticity of modern pleading" allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa. The fact remains: As to the claims that are potentially covered, the insurer gives, and the insured gets, just what they bargained for, namely, the mounting and funding of a defense. But as to the claims that are not, the insurer may give, and the insured may get, more than they agreed, depending on whether defense of these claims necessitates any additional costs.

(Internal citations omitted.) The *Buss* Court tempered an insurer's duty to defend an entire "mixed action" by its conclusion that principles of restitution entitle an insurer to reimbursement from its insured for claims that are not even potentially covered by the policy: "An insurer may obtain reimbursement only for defense costs that can be allocated *solely* to the claims that are not even potentially covered." *Buss*, 939 P.2d at 776 (emphasis in original).

Auto policy. Consistent therewith, Stacey averred that he represented Turners against all claims:

> From July of 2007 through the settlement of the case with Mr. and Mrs. Turner, I continually represented Mr. and Mrs. Turner. During that time, State Farm Mutual Automobile Insurance Company paid for all legal fees and expenses incurred in the defense of the case involving Mr. and Mrs. Turner. *At no time were Mr. and Mrs. Turner unrepresented by counsel in regard to the claims brought against them by the Estate of Whitney Schwan.*

(Emphasis added.) Thus, at all times, Turners were fully defended against Schwans' claims. This does not mean that State Farm Fire's duty to defend the Turners was extinguished by the defense provided by State Farm Auto, but only that Turners were fully defended in the litigation.

¶18 The duty to defend commonly requires the hiring of legal counsel, but may not in every case. In *Farmers Ins. Exch. v. Johnson*, 2009 MT 442, ¶ 12, 354 Mont. 192, 224 P.3d 613, Johnson was involved in a bar fight with Ogden. *Johnson*, ¶ 3. Ogden was injured during the fight and sent a demand letter to Johnson. *Johnson*, ¶ 4. Johnson tendered the demand to Farmers Insurance, and the parties set up a pre-litigation settlement conference. *Johnson*, ¶ 4. Farmers claims adjuster Stevens attended the conference, in which a settlement was reached releasing Johnson of all claims. *Johnson*, ¶¶ 4-5. Johnson subsequently sued Farmers for breaching its duty to defend "by sending an insurance adjuster instead of an attorney to defend the insured at the mediation[.]" *Johnson*, ¶ 9. Noting that, while the insurer's duty to defend "certainly encompasses functions which can only be fulfilled by a licensed attorney," we nonetheless rejected the

9

argument that retention of counsel was required and held that the duty was fulfilled under the circumstances because litigation had not yet been initiated and Stevens properly fulfilled an adjuster's duty to "investigate[] and negotiate[] the settlement of claims arising under insurance contracts," and obtained a release of claims against Johnson. *Johnson*, ¶ 12 (citing § 33-17-102(1)(a), MCA).

¶19 Here, upon notification of the claim, State Farm Fire, by Bauer and Corbin, initiated discussions with State Farm Auto and Stacey concerning the posture of the Underlying Action. They confirmed with Stacey that Turners were being defended against all claims made against them in the litigation. They received assurance that Stacey did not need the assistance of additional counsel in defending the Turners. They wrote to Turners about the litigation, noting Stacey's representation of Turners and the fact that Turners had not tendered defense of the Underlying Action to State Farm Fire, and stating they would proceed on this basis unless they heard further from Turners. They committed to undertake all responsibility for Turners' defense in the event State Farm Auto discontinued its defense. State Farm Fire retained Young, an attorney of Turners' choosing, to represent the Turners in the declaratory action, which it was not required to do. Pursuant to Stacey's requests, State Farm Fire paid Young to participate in the settlement conference to give counsel on coverage issues and Bauer also participated in the settlement conference to represent State Farm Fire. Bauer attempted to resolve the suit by offering some money for settlement, despite believing there was no coverage.

¶20   We conclude that State Farm Fire gave the necessary substance to the duty to defend and fulfilled its contractual duty to the Turners under the policy. It would make little sense for State Farm Fire to provide other legal counsel when such a need was not demonstrated. Although Schwans argue that State Farm Fire's mere "participation" in Turners' defense, without hiring separate counsel for them, fostered an "unavoidable conflict of interest," we fail to see how Turners were left unprotected or were prejudiced by State Farm Fire's actions. Indeed, in their District Court briefing that sought to justify Turners' failure to tender defense of the action to State Farm Fire, the Schwans implicitly acknowledged that fully duplicative actions by the State Farm companies was unnecessary:

> Turners have no reason to tender defense of the underlying action to State Farm because **State Farm is already defending the action.** Calvin Stacey, insurance defense attorney for State Farm has been defending the Turners in the underlying action since September 4, 2007 . . . . It makes no sense for the Turners to perform a useless act by making a second tender of defense to State Farm.

(Emphasis in original.)

¶21   Other jurisdictions that have considered the question have concluded that it is not necessary for co-insurers to provide duplicative counsel for the insured, as long as the insured is fully defended. *See Ceresino v. Fire Ins. Exch.*, 215 Cal. App. 3d 814, 823 (1989) (second lawyer not needed because insured was fully defended (citing *Mullen v. Glens Falls Ins. Co.*, 73 Cal. App. 3d 163, 174 (1977))); *Horace Mann Ins. Co. v. Barbara B.*, 61 Cal. App. 4th 158, 164 (1998) (Horace Mann did not breach a duty because insured had been fully defended during the entirety of the lawsuit by his

11

homeowner's policy); *Keene Corp. v. Ins. Co. of North America*, 667 F.2d 1034, 1051 (D.C. Cir. 1981) (where Keene had multiple insurers, "only the insurer that Keene selects will defend Keene"); *accord* Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies & Insureds*, § 4:10 at 322-23 (West Publg., 4th ed., 2001) ("Although the insured, having already been provided a defense, cannot assert a claim against the nondefending insurer based on its defense obligation, the insurer that provides the defense should be able to assert a claim . . . [for] contribution or subrogation from such other insurer.").

¶22    The cases cited by the Schwans do not support the District Court's holding that a co-insurer must hire an additional attorney or insist on paying a portion of defense costs for an insured that is already defended.  Rather, the insurers were found to have broadly breached its duty to defend by failing to assist or participate in the defense.  *See Nielsen v. TIG Ins. Co.*, 442 F. Supp. 2d 972, 975 (D. Mont. 2006) (insurer breached duty to defend because it sent numerous letters stating that it had no duty to defend insured and did not participate in settlement conference); *Signature Dev. Co., Inc., v. Royal Ins. Co.*, 230 F.3d 1215, 1220 (10th Cir. 2000) (applying Colorado law) (insurer breached its duty because it "was nonresponsive to settlement overtures, failed to communicate with its insured, and failed to fully cooperate in settlement negotiations."); *Aetna Cas. & Sur. Co. v. Coronet Ins. Co.*, 358 N.E.2d 914, 916-18 (Ill. App. 1976) (insurer "refused" to provide defense or take any part in settlement negotiations); *Lujan v. Gonzales*, 501 P.2d 673, 676-77 (N.M. App. 1972) (insurer breached duty to defend when it refused to

12

"assist" defense in any manner). Although the insurers in these cases also failed to hire counsel, that was not the basis for their holdings that the duty to defend had been breached.[3]

¶23 Neither does the failure of State Farm Fire to pay for Stacey's fees constitute a breach of the duty to defend in these circumstances. First, that failure did not affect the Turners—defense counsel and a full defense were provided to them. State Farm Fire further notes that a request for payment of Stacey's fees has not been made to it. As noted above, payment of counsel in this context is a matter of contribution between insurers. *See e.g. Horace Mann*, 61 Cal. App. 4th at 164; Windt, *Insurance Claims & Disputes*, § 4:10 at 322-23. As they remained fully defended, Turners (now the Schwans) cannot be heard to complain.

¶24 The District Court erred by concluding that State Farm Fire had breached its duty to defend under the policy. State Farm Fire did ensure a full defense was provided to Turners, even though its decisions regarding counsel did not include hiring additional counsel.

---

[3] The Schwans also cite *U.S. Fid. & Guar. v. Fed. Rural Elec. Ins. Corp.*, 78 F. Supp. 2d 1176 (D. Kan. 1999) (applying Oklahoma law) and *U.S. Fire Ins. Co. v. Green Bay Packaging, Inc.*, 66 F. Supp. 2d 987, (E.D. Wis. 1999) (applying Wisconsin law). However, these cases are not pertinent to the question presented here. *U.S. Fid. & Guar.* did not decide whether the insurer breached its duty to its insured, but concluded that Federated Insurance was obligated, under "principles of equitable subrogation" to reimburse U.S. Fidelity & Guaranty one-half of the total defense costs expended defending the insured. *U.S. Fid. & Guar.*, 78 F. Supp. 2d at 1181. In *U.S. Fire Ins. Co.*, 66 F. Supp. 2d at 997-98, the court held that the insurer breached its duty to defend because it failed to comply with the "proper procedure" of intervening and staying the underlying liability trial until the coverage issue was resolved, as required by Wisconsin law.

¶25 Accordingly, we reverse the grant of summary judgment to the Schwans that was based upon breach of the duty to defend, and vacate the District Court's attendant award of the $750,000 judgment, attorneys fees, and costs. We remand to the District Court to determine, in the first instance, whether the Schwans' claims are covered by the Turners' homeowners policy.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT