FILED

05/02/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0373

DA 22-0373

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 71

KAGECO ORCHARDS, LLC, a Montana
Limited Liability Company,

        Plaintiff and Appellant,

    v.

MONTANA DEPARTMENT OF TRANSPORTATION,
a Montana Administrative Agency,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV-2021-109
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Bruce A. Fredrickson, Angela M. LeDuc, Rocky Mountain Law Partners,
P.C., Kalispell, Montana

    For Appellee:

        Christian T. Nygren, Hannah C. Woolsey, Bart J. LaMont, Montana
Department of Transportation, Helena, Montana

Submitted on Briefs:  February 8, 2023

Decided:  May 2, 2023

Filed:

                          _____
                                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Kageco Orchards, LLC, (Kageco) appeals the June 14, 2022 Order issued by the Twentieth Judicial District Court, Lake County, granting the Montana Department of Transportation's (MDT) Motion for Summary Judgment.

¶2      We restate the issues as follows:

1. *Did the District Court err when it determined Kageco lacked standing for declaratory relief because there was no justiciable case or controversy?*

2. *Did the District Court err when it denied Kageco's request for a writ of mandamus because MDT's acts were discretionary?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3      This dispute arises from the location of mailboxes on the west side of Highway 35 within MDT's right-of-way.  In April 2014, Kageco purchased lakefront property on the west side of Highway 35.[1]  MDT has a right-of-way[2] adjacent to the property where there is a mailbox turnout.  The State has had continuous jurisdictional authority over MDT's right-of-way since 1942.  The right-of-way is comprised of a 60-foot-wide strip of land, acquired in fee simple by Flathead County on April 19, 1912, and subsequently conveyed by quit claim deed to Lake County.  Kageco's property ends 30 feet from Highway 35's

---

[1] The property is recorded in the office of the Lake County Clerk and Recorder as "Corrected Parcels 1 & 2 located in a portion of Government Lot 3, Sec. 29, T.25N, R.19W., P.M.M., Lake County, Montana, as shown on Certificate of Survey 7024-RT."

[2] "Right-of-way" is statutorily defined as a "general term denoting land, property, or any interest in land or property, usually in a strip, acquired for or devoted to highway purposes."  Section 60-1-103(24), MCA.

centerline and does not enter MDT's right-of-way. Kageco does not own any portion of MDT's right-of-way, including the turnout where the mailboxes at issue are located.

¶4 Kageco owns a mailbox on MDT's right-of-way next to two mailboxes owned by its neighbors, Paul and Doug Patterson (Pattersons), who own property on the east side of Highway 35. The three mailboxes are situated in an established gravel turnout off Highway 35 away from any driveway. The mailbox turnout existed at the time Kageco purchased its property.

¶5 To determine the safe placement and location of mailboxes, MDT uses the Montana Guide to Mailbox Safety and Placement (Guide) in collaboration with the U.S. Postal Service, Federal Highway Administration safety engineers, and numerous State Departments of Transportation across the country. The Guide provides that safe and cost-effective supports and attachment hardware for mailboxes should be placed as far from the ways of travel as possible to minimize the probability of impact and to provide mail carriers room to exit the travel way so that traffic is not impeded. For roadways where the speed limit exceeds 35 miles per hour, the Guide recommends that mailboxes should be placed in turnouts with a clear line of sight so that the mail carrier and homeowners have a "refuge" to avoid the dangers of traffic flow. Mailboxes placed farther from roadways create less probability that the mailboxes will be hit by an errant vehicle.

¶6 The applicable recommendation in the Guide for placement of mailboxes on turnouts with an approach requires that there be 14 feet of space between the driveway and

3

the mailbox, along with 6 more feet of space on the opposite side of the mailboxes. Since the east side of Highway 35, directly across from Kageco's property, does not meet the size requirements for a turnout with an approach, the safest placement for mailboxes is on the west side of Highway 35 on MDT's right-of-way. This placement on the west side of Highway 35 allows mail carriers to fully exit the lane of traffic and to service multiple mailboxes at once.

¶7　　On June 3, 2021, Kageco filed suit against MDT, alleging the placement of the mailboxes create a potential hazard and interfered with Kageco's lawful use of the turnout approach from Highway 35 to its property. Kageco sought a declaratory judgment, and alternatively, a writ of mandamus, to have the Pattersons' mailboxes removed from the west side of Highway 35 and relocated to a new permitted location. MDT filed a Motion for Summary Judgment on September 22, 2021. Kageco responded with its own Motion for Summary Judgment on September 30, 2021. On January 13, 2022, the District Court held oral argument on the cross-motions for summary judgment. The District Court denied Kageco's Motion and granted judgment to MDT on June 14, 2022, ruling (1) no "case or controversy" existed for purposes of Montana's Uniform Declaratory Judgment Act (UDJA), (2) Kageco did not have standing to pursue its claim for declaratory relief, and (3) Kageco's request for a writ of mandamus must be denied because MDT's acts were "discretionary," as opposed to "ministerial." Kageco appeals.

**STANDARD OF REVIEW**

4

¶8 We review district court summary judgment rulings de novo for conformance to the applicable standards specified in M. R. Civ. P. 56. *Dick Anderson Constr., Inc. v. Monroe Prop. Co.*, 2011 MT 138, ¶ 16, 361 Mont. 30, 255 P.3d 1257. Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). A genuine issue of material fact is a fact materially inconsistent with proof of an essential element of a claim or defense at issue. *Mt. W. Bank, N.A. v. Mine & Mill Hydraulics, Inc.*, 2003 MT 35, ¶ 28, 314 Mont. 248, 64 P.3d 1048. To meet the responsive Rule 56 burden of demonstrating that a genuine issue of material fact precludes summary judgment, the nonmoving party must in proper form, and by more than mere denial, speculation, or pleading allegation, "set out specific facts" showing the existence of a genuine issue of material fact. M. R. Civ. P. 56(e)(2).

¶9 The party seeking summary judgment has the initial burden of showing a complete absence of any genuine issue of material fact on the Rule 56 record and that the movant is accordingly entitled to judgment as a matter of law. *Weber v. Interbel Tel. Coop.*, 2003 MT 320, ¶ 5, 318 Mont. 295, 80 P.3d 88. The Rule 56 factual record includes "the pleadings, the discovery and disclosure materials on file, and any [supporting] affidavits" submitted. M. R. Civ. P. 56(c)(3). The burden then shifts to the opposing party to either show the existence of a genuine issue of material fact precluding summary judgment or that the moving party is nonetheless not entitled to judgment as a matter of law. *Osterman v. Sears, Roebuck & Co.*, 2003 MT 327, ¶ 17, 318 Mont. 342, 80 P.3d 435. This Court

5

must view the Rule 56 factual record in the light most favorable to the non-moving party, with all reasonable inferences drawn in favor thereof. *Weber*, ¶ 5. This Court has no duty, however, to anticipate or speculate regarding contrary material facts. *Gamble Robinson Co. v. Carousel Prop.*, 212 Mont. 305, 312, 688 P.2d 282, 286-87 (1984).

## DISCUSSION

¶10 *Did the District Court err when it determined Kageco lacked standing for declaratory relief because there was no justiciable case or controversy?*

¶11 The UDJA is remedial in nature and its purpose is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Section 27-8-102, MCA. The UDJA is meant to be construed and administered liberally. *Murray v. Motl*, 2015 MT 216, ¶ 11, 380 Mont. 162, 354 P.3d 197. "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Murray*, ¶ 11; § 27-8-201, MCA. "Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." Section 27-8-206, MCA.

¶12 Before a court may exercise jurisdiction, a justiciable controversy must exist under the UDJA. *Broad Reach Power, LLC v. Mont. Dep't of Pub. Serv. Regul., Pub. Serv. Comm'n*, 2022 MT 227, ¶ 9, 410 Mont. 450, 520 P.3d 301. "Liberal interpretation of the [UDJA] is tempered by the necessity that a justiciable controversy exists before courts

6

exercise jurisdiction." *Northfield Ins. Co. v. Mont. Ass'n of Cntys.*, 2000 MT 256, ¶ 10, 301 Mont. 472, 10 P.3d 813. "To be justiciable, a controversy must be appropriate for judicial determination, definite and concrete such that it touches legal relations of parties having adverse legal interests and be a real and substantial controversy that enables relief through a decree of conclusive character." *Broad Reach Power*, ¶ 10 (citations omitted) (citing *Chovanak v. Matthews*, 120 Mont. 520, 526, 188 P.2d 582, 585 (1948)). To determine whether a justiciable controversy exists, this Court must apply the following test: "(1) a justiciable controversy requires that parties have existing and genuine, as distinguished from theoretical, rights or interests; (2) the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion; and (3) it must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationship of one or more real parties in interest, or lacking these qualities be of such overriding public moment as to constitute the legal equivalent of all of them." *Miller v. State Farm Mut. Auto. Ins. Co.*, 2007 MT 85, ¶ 8, 337 Mont. 67, 155 P.3d 1278 (citing *Northfield*, ¶ 12).

¶13 "Courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, declare social status, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies

which may hereafter arise, or give abstract opinions. The [UDJA] does not license litigants to fish in judicial ponds for legal advice." *Broad Reach Power*, ¶ 10 (quoting *Brisendine v. Dep't of Commerce*, 253 Mont. 361, 365, 833 P.2d 1019, 1021 (1992)). "In contrast to a purely political, administrative, philosophical or academic issue, an issue is justiciable if within the constitutional power of a court to decide, an issue in which the asserting party has an actual, non-theoretical interest, and an issue upon which a judgment can effectively operate and provide meaningful relief." *City of Missoula v. Fox*, 2019 MT 250, ¶ 11, 397 Mont. 388, 450 P.3d 898 (citations omitted).

¶14     Justiciability also includes distinct considerations of legal standing. *Larson v. State*, 2019 MT 28, ¶ 18, 394 Mont. 167, 434 P.3d 241. "Standing is a threshold requirement of justiciability applicable to all claims for relief as a matter of constitutional law and related prudential policy considerations." *Larson*, ¶ 45. "Though substantively cognizable, a claim for declaratory judgment is nonetheless not justiciable if the plaintiff lacks personal standing to assert the claim." *Larson*, ¶ 45; *Mitchell v. Glacier Cty.*, 2017 MT 258, ¶ 42, 389 Mont. 122, 406 P.3d 122. Courts lack "power to resolve a case brought by a party without standing— i.e., a personal stake in the outcome—because such a party presents no actual case or controversy." *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 29, 360 Mont. 207, 255 P.3d 80; *see also Baxter Homeowner's Ass'n, Inc. v. Angel*, 2013 MT 83, ¶ 14, 369 Mont. 398, 298 P.3d 1145 (standing is not subject to waiver since it bears upon a court's subject matter jurisdiction).

¶15     "There are two elements to standing: the case-or controversy requirement imposed by the Montana Constitution, and judicially created prudential limitations imposed for reasons of policy." *Mitchell*, ¶ 10.  Under the case-or-controversy requirement, a plaintiff must show, "at an irreducible minimum," that it "has suffered a past, present, or threatened injury to a property or civil right, and that the injury would be alleviated by successfully maintaining the action."  *Mitchell*, ¶ 10 (citation omitted). An alleged injury must be "concrete" rather than "abstract." *Mitchell*, ¶ 10.  To qualify as "concrete," an injury must be "actual or imminent, not conjectural or hypothetical."  *Mitchell*, ¶ 10; *Heffernan*, ¶ 32. In other words, without a justiciable case or controversy, there cannot be standing.

¶16     On appeal, Kageco cites § 27-8-201, MCA, and maintains the declaratory judgment statute defines "precisely" the type of relief Kageco seeks, and that this Court should construe the statute liberally in favor of Kageco.  It argues "the issues are genuine, real and not theoretical" because MDT is "simply" required to abide by the statutes to regulate mailbox encroachment permits.  Kageco argues this Court's judgment can provide it meaningful relief by declaring that MDT cannot "ignore" the encroachment statutes and regulations.

¶17     Kageco contends the placement of the mailboxes at their current location creates a justiciable controversy because Kageco "is negatively impacted by the mailboxes' placement; [and] it has demonstrated that it has been, and likely will be negatively impacted in the future."  Kageco asserts the injury is not theoretical because the mailbox placement

9

negatively impacts the aesthetics of Kageco's property; the number of mailboxes has increased; the resulting traffic has increased; there is significant danger posed by those accessing the mailboxes by driving the wrong way on the highway; and there has already been an incident where a vehicle struck the mailboxes requiring their reinstallation. To support that his claims are not theoretical, Kageco relies on declarations made by William Caras (Caras), Kageco's managing member, that "[t]he mailboxes . . . create a potentially dangerous hazard and interfere with Kageco's rightful use of the approach from Highway 35 to its property." Kageco asserts because it presented a clear justiciable controversy, it has standing to contest MDT's "arbitrary actions" that effect Kageco's property.

¶18     The record does not support Kageco's contentions. Kageco has no legal rights, ownership, or control over Pattersons' mailboxes or MDT's right-of-way. Kageco's property does not enter or cross MDT's right-of-way. MDT allowed the mailboxes to be placed in its right-of-way to provide the safest and most efficient location of the mailboxes according to the Guide. In addition, the east side of Highway 35 does not meet the size requirements for a turnout with an approach appropriate for the placement of the mailboxes. Despite Caras's declaration about increased traffic, there is no evidence in the record that Kageco suffered any injury or personal harm due to the location of the mailboxes. Rather, Kageco asserts the mailboxes create a *potential* hazard that interferes with its right to use its property from Highway 35. Kageco has presented no admissible evidence that the two mailboxes placed in MDT's right-of-way created a hazardous

condition along Highway 35 or any admissible evidence that Kageco's rightful use of the approach to Highway 35 has been interfered with. In the absence of any evidence supporting his claims, Kageco is unable to demonstrate an actual injury sufficient to confer standing. In fact, the undisputed evidence was that the MDT assessed the safety of the area and, pursuant to safety guidelines, determined the mailboxes were placed in the safest and most efficient location.

¶19 Kageco has not suffered any personal harm because of the placement of mailboxes in MDT's right-of-way; Kageco simply owns property adjacent to MDT's right-of-way. Kageco has failed to prove it suffered a past, present, or threatened concrete injury. Kageco's claims of speculative harm are inadequate to establish an actual concrete injury under the case or controversy requirement. *See Mitchell*, ¶ 10. Kageco's suggestion that the mailboxes present a hazard based on an automobile accident also does not present a concrete injury. The accident, in and of itself, does not demonstrate that placement of the mailboxes created a hazardous condition. As such, Kageco has not offered any evidence showing it has suffered past or present personal harm, nor is likely to suffer future harm as a result of the location of the mailboxes. In fact, the record shows the mailboxes were placed in the right-of-way pursuant to safety guidelines. The District Court did not err in granting summary judgment in favor of MDT because Kageco has not demonstrated how it suffered or will suffer any injury to its legal rights.

¶20 *Did the District Court err when it denied Kageco's request for a writ of mandamus because MDT's acts were discretionary?*

¶21 Courts may issue a writ of mandamus to "compel the performance of an act that the law specially enjoins as a duty resulting from an office, trust, or station." Section 27-26-102, MCA. A writ of mandate is "an extraordinary remedy" available in only "rare" cases. *Boehm v. Park Cty.*, 2018 MT 165, ¶ 9, 392 Mont. 72, 421 P.3d 789; *see also State ex rel. Thomas v. Dist. Ct.*, 224 Mont. 441, 442, 731 P.2d 324, 324-25 (1986). A writ of mandamus is available when (1) the party who applies for it is entitled to the performance of a clear legal duty by the party against whom the writ is sought; and (2) there is no speedy and adequate remedy available in the ordinary course of law. *Boehm*, ¶ 9 (quoting *Best v. Police Dep't of Billings*, 2000 MT 97, ¶ 14, 299 Mont. 247, 999 P.2d 334); *see also* § 27-26-102, MCA. A clear legal duty must involve a ministerial act, not a discretionary act. *Victor Fed'n of Teachers Local 3494 v. Victor Sch. Dist. No. 7*, 2018 MT 72, ¶ 13, 391 Mont. 139, 414 P.3d 1284; *see also Citizens for a Better Flathead v. Bd. of Cnty. Comm'rs*, 2016 MT 325, ¶ 59, 385 Mont. 505, 386 P.3d 567. An act is ministerial when the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment. *Victor*, ¶ 13.

¶22 This Court has frequently held that decisions related to permitting, zoning, and variances are discretionary decisions, not ministerial acts. *Boehm*, ¶ 15. For instance, the denial of a conditional use permit is a discretionary decision. *Beasley v. Flathead Cnty. Bd. of Adjustments*, 2009 MT 120, ¶ 18, 350 Mont. 171, 205 P.3d 812. Also, we have

12

characterized a city's approval of a variance as purely discretionary, and not ministerial. *State ex rel. Galloway, Inc. v. Great Falls*, 211 Mont. 354, 359, 684 P.2d 495, 498 (1984).

¶23    Pursuant to § 60-6-101(1)(a), MCA, MDT, "for a mailbox or newspaper delivery box, *may* issue an encroachment permit pursuant to subsection (3) . . . ." (Emphasis added.) The statutory language is also permissive in § 60-6-101(3)(b), MCA, which states that "the department [MDT] *may* issue an encroachment permit for a completed permit application for a mailbox or newspaper delivery box." (Emphasis added.)  The use of the word "may" means that the decision to be made is discretionary.  This Court has held that "may" does not have a mandatory connotation in its usual meaning.  *Dover Ranch v. Cnty. of Yellowstone*, 187 Mont. 276, 284, 609 P.2d 711, 715 (1980).   In the administrative rules, the language is also discretionary: the "decision to grant, deny, or revoke an encroachment permit is solely within the discretion of the department." Admin. R. M. 18.7.110(2) (2014); *see also* Admin. R. M. 18.7.105(4)(d) (2014) ("Mailboxes may be allowed in the right-of-way but must meet standards defined and reviewed by the department.").

¶24    In construing statutes, this Court's role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.  When statutory language is clear and unambiguous, this Court discerns and effects legislative intent from the plain meaning of the language used without further resort to means of statutory construction. *Larson*, ¶ 28. This Court applies the same principles in construing administrative rules as it does in

13

construing statutes. *Juro's United Drug v. Mont. Dep't of Pub. Health & Human Servs.*, 2004 MT 117, ¶ 12, 321 Mont. 167, 90 P.3d 388.

¶25 Kageco asserts mandamus is appropriate because MDT allegedly ignored its statutory and regulatory "mandates," creating a ministerial legal duty for MDT. While Kageco admits MDT has "*some* discretion with respect to issuance of a mailbox encroachment permit" (emphasis in original), it argues MDT's discretion is limited to after an application for an encroachment permit is submitted, but the permit application itself is mandatory.

¶26 Here, MDT's actions allowing placement of the mailboxes in an established turnout within its right-of-way is a discretionary decision not subject to a writ of mandate. The relevant statutes and regulations use permissive language, and the encroachment permit process is a discretionary act—not ministerial. Neither §§ 60-6-101(1), nor 60-6-101(3), MCA, creates a ministerial duty requiring MDT to issue or enforce encroachment permits for mailboxes. The administrative rules clearly state MDT's decisions to issue and enforce encroachment permits are "solely within [its] discretion" and therefore do not present a ministerial duty. *See* Admin. R. M. 18.7.110(2) (2014). The inclusion of the word "may" in the statutes and the administrative rules evinces the legislature's intent to grant discretion to MDT in issuing and enforcing encroachment permits for mailboxes. The determination made by MDT that no encroachment permit was needed for mailboxes placed within MDT's designated turnout was a discretionary decision committed to the MDT.

14

Additionally, the record reflects that MDT used the Guide to evaluate the safest and most efficient location for the mailboxes. MDT further inspected the mailboxes according to its obligations under the Guide and discretionarily determined the mailboxes are positioned in the safest and most efficient location for mail carriers and motorists.

¶27 Lastly, Kageco construes Admin. R. M. 18.7.102(6) (2014) as prohibiting MDT from exercising discretion to allow the Pattersons to place their mailbox within the right-of-way when they do not own property on the same side of Highway 35. Admin. R. M. 18.7.102(6) (2014) states, "Applicants must be the owner of the property abutting the right-of-way at the encroachment's proposed location. . . ." Here, MDT exercised its discretion to determine that the encroachment permitting process was not necessary. Therefore, regulations pertaining to the application process and requirements pertaining to the applicant do not apply.

¶28 The District Court properly ruled a writ of mandamus was not available to Kageco because no clear ministerial legal duty exists for MDT to engage in the encroachment permit process.

## CONCLUSION

¶29 We affirm the District Court's grant of summary judgment to MDT and hold that Kageco's request for declaratory judgment relief and mandamus were correctly denied.

/S/ LAURIE McKINNON

15

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE